## Richmond.

POSTAL TELEGRAPH CABLE CO. v. CITY OF NORFOLK.

January 15, 1903.

1. TELEGRAPH COMPANIES—*License Tax—Constitutiional Law—Interstate Commerce.*—A city ordinance imposing a privilege tax on the business of a telegraph company, done wholly between that city and other points within the State, and expressly excepting all foreign and interstate business, and telegrams sent to or received by the United States or this State, or their agents or officers, is not in contravention of the commerce clause of the Constitution of the United States.

2. TELEGRAPH COMPANIES—*License Tax—Constitutiional Law—Ad Valorem System of Taxation.*—A city ordinance imposing a privilege tax on a telegraph company is not in conflict with Section 4, Article X., of the Constitution of this State permitting the Legislature to impose a license tax on any business which cannot be reached by the *ad valorem* system. The tax imposed by the ordinance is a tax upon the privilege of doing business in the city, and is wholly different from a property tax. It is immaterial that the State taxes the property of the company on the *ad valorem* system. The two subjects of taxation are wholly different, and both may be taxed without being obnoxious to the objection that it is double taxation.

3. TAXATION—*Excessive—Redress.*—If taxes, authorized by a valid law, are onerous and oppressive, the grievance cannot be redressed by an appeal to the courts, but to the sense of fairness and justice of the law-making power.

Error to a judgment of the Circuit Court in the city of Norfolk rendered July 9, 1901, affirming a judgment of the Police Justice of said city, whereby the plaintiff in error was fined for violation of an ordinance of the city of Norfolk.

*Affirmed.*

The opinion states the case.

*J. R. McIntosh* and *C. C. Anderson*, for the plaintiff in error.

*Walter H. Taylor*, for the defendant in error.

KEITH, P., delivered the opinion of the court.

The Postal Telegraph-Cable Company is a corporation chartered under the laws of the State of New York, which has constructed, maintains and operates telegraph lines in many of the States, including the State of Virginia, and, in the year 1900, had an office and place of business in the city of Norfolk, was engaged in the transmission of telegraph messages from the city of Norfolk to other points in other States, and from other States and places beyond this State into the city of Norfolk, in the State of Virginia—that is to say, it was an instrumentality in the conduct of interstate commerce, as well as business within the State. It appears that some time before the year 1900 it had duly accepted the provisions of an Act of Congress approved July 24, 1866, entitled "An Act to aid in the construction of telegraph lines, and to secure to the government the use of the same for postal, military, and other purposes," as required by section 5268 of the Revised Statutes of the United States.

By an Act of March 6, 1890, amended by an Act of March 3, 1898, (Acts 1897-'8, p. 752), petitioner was required on or before the first day of June of each year, to make report verified by oath to the Auditor of Public Accounts of the State of Virginia of all real and personal property owned by it as of the first day of February in each year, showing what part of its property is owned in each county or corporation, and classifying the same. This report was duly made to the Auditor of Public Accounts, showing the aggregate value of the property of the Postal Telegraph-Cable Company in the State of Virginia to

be $52,076.24, and the aggregate value of its property located in the city of Norfolk to be $555.00.

It further appears that an *ad valorem* tax of forty cents on every hundred dollars' worth of property owned by petitioner was assessed by the State and paid by the company; that the taxes paid by the company to the State for the year 1900 amounted to the sum of $949.83, being an *ad valorem* tax of 40 cents on $100, upon the valuation of the property in the State at $52,076.24, and a further tax of $2.00 on each mile of poles owned and operated within the State, and also a charge of two *per centum* of the gross intrastate business. It further appears that each county and municipality of the State in which such company owns property may impose an *ad valorem* tax upon the assessed value of the same as assessed by the State; and that the city of Norfolk, by virtue of section 126 of an "Ordinance imposing taxes on property, persons and licenses, for the payment of interest on the city debt, and to meet general appropriations for the year beginning July 1, 1900," imposed a privileged tax of $250.00 upon the defendant company, and in addition $1.00 per pole on each pole, and $1.00 on every hundred feet of conduits on the streets and alleys of the city of Norfolk owned and used by it, for the non-payment of which tax the prosecution in this cause was commenced and maintained, which tax the ordinance required in its first section to be paid before the petitioning company should engage in any business in the city of Norfolk, and provided in section 142 a penalty if same were not paid on or before May 31st. It further appears that the city of Norfolk could have assessed and required the defendant company to pay an *ad valorem* tax upon the valuation of its property in the city.

The Postal Telegraph-Cable Company, having failed to pay the taxes to the city as provided by the ordinance above cited, it was summoned before a police justice to show cause why it should not be fined, was found guilty, and judgment en-

tered against it for $21.50, being the amount of the fine and costs. From this judgment a writ of error was awarded by the Circuit Court, and at a later day it was affirmed. Thereupon a petition was presented to this court, and a writ of error awarded.

The first error assigned is, that the ordinance of the city of Norfolk is in violation of section 8, Art. I., of the Constitution of the United States, which confers upon the Congress of the United States power "to regulate commerce with foreign States and among the several States and with the Indian Tribes."

The ordinance of the city of Norfolk is in the following words: "1. Be it ordained by the Common and Select Councils of the city of Norfolk, that no person shall engage in any business in the said city of Norfolk, for which a license is required by the laws of the Commonwealth, or the ordinances of said city, without first having applied for and obtained such license under penalty of not less than twenty nor more than one hundred dollars; and that for the year beginning on the first day of February, 1901, and for each year thereafter, the taxes on lands and lots, persons, incomes and other property shall be as follows:

"126. Any person, firm or corporation who shall engage in the business of sending telegrams from the city of Norfolk to a point within the State of Virginia, or receiving telegrams in the city of Norfolk from a point in the State of Virginia, excepting, however, telegrams sent to or received by the Government of the United States or this State, or their agents or officers, shall pay a license tax of $250, and in addition $1 per pole on each pole, and $1 on every hundred feet of conduits, on the streets or alleys of the city of Norfolk owned or used by the said person, firm or corporation.

"138. Nothing in this ordinance shall be construed as imposing a license tax on, or otherwise regulating or restricting foreign or interstate commerce, and any business or portion

thereof which is embraced in the term "interstate commerce," or in the term "foreign commerce," is not made subject to a license by this ordinance.

"142. Any persons, firm or corporation liable to a license tax under this ordinance failing to pay the same on or before the 31st of May, shall be subject to a penalty of $20 per day, recoverable before any justice of the peace."

It is evidently meant to conform to the ordinance of the city of Charleston, the validity of which was considered by the Supreme Court of the United States in the case of *Postal Telegraph Company* v. *City of Charleston*, 153 U. S. 692, 38 L. Ed. 871.

By an act approved December 17, 1881, the General Assembly of the State of South Carolina authorized the City Council of Charleston to impose a license tax, not exceeding $500, on all persons engaged in any business, trade or profession in the city of Charleston, and, by an ordinance to regulate licenses for the year 1892, the City Council enacted that every person, firm, company or corporation engaged in any trade, business or profession within the city of Charleston should obtain, on or before the 20th day of January, 1892, a license therefor. The provision relating to telegraph companies is as follows: "Telegraph companies or agencies, each for business done exclusively within the city of Charleston, and not including any business done to or from points without the State, and not including any business done for the government of the United States, its officers or agents, $500." A penalty, for failure to take out the license, of fifty *per cent.* of the amount of the tax was provided for, and a continuing penalty of fifty *per cent.* for each day's business done without taking out such license. The Postal Telegraph Company, after notification, declined and failed to take out and pay for such license, and on May 28, 1892, in pursuance of the terms of the ordinance, the license

tax of $500.00, with penalty of fifty *per cent.*, was assessed against the company, and put in the hands of the city treasurer, who issued execution therefor, addressed to the city sheriff, requiring him to proceed to collect said license tax and penalty by distress and sale.

Mr. Justice Shiras, after reviewing a number of decisions upon the subject, says: "The reasoning of these cases needs no reinforcement, and their conclusion are readily applied to the case in hand.

"The express terms of the ordinance restrict the tax to 'business done exclusively within the city of Charleston, and not including any business done to or from points without the State, and not including any business done for the government of the United States, its officers or agents.'

"It is claimed that the Postal Telegraph Company is not within the terms of this ordinance, because it does not do any business exclusively within the city of Charleston; that its city offices are merely initial points for sending and receiving messages, and that, irrespective of the messages sent or received outside of the State, the intrastate messages are not between points within the city; and that, if license exactions were allowed to and made by the various cities in the State, great injury and wrong would be done to the telegraph company.

"But this is a hardship, if such exists, that is not within our province to redress. If business done wholly within a State is within the taxing power of the State, the courts of the United States cannot review or correct the action of the State in the exercise of that power.

"It is further contended that the ruling of the cited cases does not cover the case of a telegraph company which has constructed its lines along the post roads in the city of Charleston, and elsewhere, and which is exercising its function under the Act of Congress as an agency of the government of the United States. It is obvious that the advantages or privileges that are

conferred upon the company by the Act of July 24, 1866 (Rev. Stat., secs. 5263-5268) are in the line of authority to construct and maintain its lines as a means or instrument of interstate commerce, and are not necessarily inconsistent with a right on the part of the State in which business is done and property acquired to tax the same, within the limitations pointed out in the cases heretofore cited." This case was decided at the term of the court preceding the decision in *Postal Telegraph Company* v. *Adams*, 155 U. S. 688, 39 L. Ed. 311, where it was held that "by whatever name the exaction may be called, if it amounts to no more than the ordinary tax upon property or a just equivalent therefor, ascertained by reference thereto, it is not open to attack as inconsistent with the Constitution."

The *Postal Telegraph Company* v. *Adams* was relied upon by this court in *Postal Tel. Co.* v. *City of Richmond*, 99 Va. 102, 37 S. E. 789, where we reached the conclusion that an ordinance of the city of Richmond imposed a tax which was in excess of what would be the tax upon the property of the telegraph company within the city limits under the ordinary modes of taxation; that the payment of the tax was made a prerequisite of the right of the company to transact business, and was, therefore, upon authority of *Postal Tel. Co.* v. *Adams*, *supra*, repugnant to sec. 8, Art. I., of the Constitution of the United States, and void.

As we have seen, *Postal Telegraph Company* v. *Adams* was decided subsequently to the *Postal Co.* v. *Charleston*, and does not refer to that case. It must be assumed, therefore, that it was not intended in any way to question its authority. Nor does there seem to be any conflict between the cases. The tax in *Postal Co.* v. *Adams* was maintained because it was held to be not more than a just equivalent for the tax upon the property. The ordinance levying the tax in *Postal Co.* v. *City of Richmond* was held to be void because it was far in excess of what would have been due upon an *ad valorem* tax upon the property

within the city, and its payment was made a prerequisite to the transaction of business; but in the Charleston case the Supreme Court declined to interfere because by the very terms of the ordinance a tax upon interstate commerce was excluded, and a taxation was expressly limited to the receipts from domestic business, and, so in the case before us, the Postal Tel. Co. is left free to transact interstate business without taxation or restraint of any kind, and the license tax and other charges are levied uniformly upon all persons, firms or corporations sending telegrams from the city of Norfolk to a point within the State of Virginia, or receiving telegrams in the city of Norfolk from a point in the State of Virginia, excepting, however, telegrams sent to or received by the Government of the United States or this State or their agents or officers. In order to exclude any possible interpretation to the contrary, by section 136 of the city ordinance, it is provided that "nothing in this ordinance shall be construed as imposing a license tax on, or otherwise regulating or restricting foreign or interstate commerce, and any business or portion thereof which is embraced in the term 'interstate commerce,' or in the term 'foreign commerce,' is not made subject to this ordinance." The case seems to us to be ruled in this respect by the decision in *Postal Tel. Co.* v. *City of Charleston,* above cited.

It is claimed, however, that the tax is in violation of section 4, Art. X., of the Constitution of the State of Virginia, which provides that the "General Assembly may levy a tax upon the following licenses: Commission merchants, persons selling by sample, brokers and pawn-brokers, and all other business which cannot be reached by the *ad valorem* system. The capital invested in all business operations shall be assessed and taxed as other property."

In support of this contention the case of *Thomas* v. *Snead,* 99 Va. 613, 39 S. E. 586, is cited. The same contention with

respect to that case was made in the case of *Newport News &
Old Point Rwy. Co.* v. *City of Newport News,* 100 Va. 157, 40
S. E. 645, and Judge Harrison disposes of it as follows:

"The property of the plaintiff in eror being assessed upon the
*ad valorem* basis for purposes of State taxation, it is insisted
that, under the recent decision of this court in *Thomas* v. *Snead,
supra,* the city can exact no license tax of the plaintiff in error,
but must be confined to taxing its property upon the *ad valorem*
system. The question involved in that case was the power of
the city of Lynchburg to exempt the capital stock of certain
manufacturing enterprises in that city from taxation. The
capital of these joint-stock companies was taxed by the State
upon the *ad valorem* basis. The court held that the city had no
power to exempt the capital thus invested from taxation; and,
in pointing out the method by which alone it could be taxed by
the city, the court further held that inasmuch as the Legislature
had determined that the capital stock of such manufacturing
enterprises could be reached by the *ad valorem* system, and so
reached it for purposes of State taxation, no other method of
reaching the same was open to the city. The case at bar pre-
sents a very different question. The city of Newport News is
not proposing to exempt the plaintiff in error from taxation.
On the contrary, the property used in conducting its street
railway business is taxed by the city upon the *ad valorem* basis,
as it is by the State. The ordinance in question imposes, in ad-
dition, a license tax upon the privilege enjoyed of conducting
the street-car business. That the privilege of running street-
cars through the crowded thoroughfares of a city is, in the
discretion of the Council, a legitimate subject upon which to
impose a license tax, either for the purposes of raising revenue
under its general powers of taxation, or in the exercise of its
general police power, cannot be seriously questioned.'"

The opinion in that case also shows clearly that the imposi-
tion of a license tax upon a street railway, in addition to a tax

upon the property used in carrying on the business, is not double taxation. In support of this proposition the case of *Commonwealth* v. *Moore*, 25 Gratt. 951 is cited, and the more recent case of *Morgan* v. *Commonwealth*, 98 Va. 812, 35 S. E. 448, where this court said: "Attorneys at law, physicians, and others pay license taxes for the privilege of practicing their professions and conducting their business, and taxes are imposed upon the property used by them in carrying on their professions and business. This has never been considered double taxation."

In the case of *Newport News, &c. Rwy. Co.* v. *City of Newport News, supra,* an ordinance of the city was sustained which levied a tax "on each and every street railway company twenty-five dollars each for the first ten cars, and ten dollars on each car in addition thereto used in the city, and an additional tax of fifty cents on each and every pole owned by said company in the city."

That case seems to dispose of the one under consideration. When we consider the amount of business transacted by the Postal Company within the city of Norfolk, and within the State of Virginia, it may be conceded that the taxes imposed upon it in various forms are onerous and oppressive, but the law operates upon all alike, is not repugnant to the Constitution of the United States or of the State of Virginia, and there is no ground upon which we can hold it to be invalid. If it be a grievance, it is one which cannot be redressed by an appeal to the courts, but to the sense of fairness and justice of the law-making power.

The judgment complained of is affirmed.

*Affirmed.*