# 𝔑𝔦𝔠𝔥𝔪𝔬𝔫𝔡

## THE CHESAPEAKE AND POTOMAC TELEPHONE COMPANY OF VIRGINIA v. CITY OF NEWPORT NEWS.

January 17, 1955.

Record No. 4284.

Present, Hudgins, C.J., and Eggleston, Spratley, Buchanan, Miller and Smith, JJ.

The opinion states the case.

*Leigh D. Williams, W. R. C. Cocke, Harry H. Holt, Jr.* and *H. H. Walker Lewis,* for the plaintiff in error.

*Harry L. Nachman* and *Bert A. Nachman,* for the defendant in error.

SPRATLEY, J., delivered the opinion of the court.

The plaintiff, The Chesapeake and Potomac Telephone Company of Virginia, is now and has been for many years operating its telephone business, both in interstate and intrastate commerce, within the City of Newport News, Virginia. The franchise under which it formerly operated expired December 31, 1950. That franchise required no payment of money to the City; but expressly reserved to the City the right to impose any lawful tax. By ordinance, the City imposed an annual license tax of $2,000, plus $1.00 per pole, and $1.00 per one hundred feet of conduit.

In October, 1950, negotiations were conducted by representatives of the City and the local manager of the Telephone Company with reference to a new franchise. The negotiators were unable to reach an agreement as to its terms and provisions, especially with regard to the character and amount of the annual license tax proposed to be imposed

by the City. In January, 1951, the City Manager of Newport News had prepared a new franchise, which he recommended for adoption by the City Council. This franchise was considered by the Council at several of its meetings and at conferences held with representatives of the Telephone Company, prior to the adoption of the City's annual budget and appropriations ordinance for the fiscal year beginning May 1, 1951, and ending April 30, 1952; but its adoption was deferred.

On April 2, 1951, during the period of the negotiations with the Telephone Company, the City adopted an ordinance imposing license taxes for the year beginning May 1, 1951, thereby effecting a general increase of 10% in such taxes. This resulted in increasing the annual license tax of the Telephone Company to $4,321.85, consisting of a flat license of $2200.00, plus $1.10 per pole and $1.10 for each one hundred feet of conduit. The license tax in the increased amount was paid by the Telephone Company on April 27, 1951, and a license was issued to it for the year beginning May 1, 1951.

On April 30, 1951, still unable to reach an agreement with the Telephone Company as to the terms of a franchise, the City Council adopted an emergency ordinance amending Section 103 of the above ordinance imposing taxes on licenses for municipal purposes for the year commencing May 1, 1951. That amended ordinance, the subject of the controversy here, reads as follows:

"*An Ordinance to Amend and Re-ordain Section 103 of an Ordinance Imposing Taxes on Licenses for Municipal Purposes for the year Commencing May 1, 1951, and For Each Year Thereafter, as Amended:*

"*Be It Ordained* by the Council of the City of Newport News that Section 103 of an ordinance imposing taxes on licenses for municipal purposes for the year commencing May 1st, 1951, and for each subsequent year thereafter, and until further provisions are made, the *following occupations,* employment, professions and business transactions *shall be*

*deemed privileges,* and shall not be pursued within the limits of the city without license, and the payment annually of the tax on each designated occupation, employment, profession or business respectively, be, and the same hereby is, amended and re-ordained to read as follows:

"Section 103. Telephone Companies.

"On each and every telephone company conducting a telephone exchange in this city and using and occupying the streets, avenues, and alleys in the city, and constructing and maintaining the works of the telephone company, or any part thereof, along, over and under the said streets, avenues and alleys in the city * * * three percent (3%) of the gross receipts from local telephone exchange service within the city, received by such company for the business done in said city for the preceding year ending April 30th, prior to each license year, and this amount shall include any and all amounts paid by such company as a merchant's license tax to said city. *In determining the gross income, it shall be based on the business done exclusively in this city and shall not include business done to and from points without this State, and shall not include any business done for the Government of the United States, its officers or agents.*

"Each Company at the time of making application for its license, shall file with the Commissioner of the Revenue of this city, a sworn statement, and also verified by oath of its agent in this city, should it have one, showing the amount of gross receipts or collections, and obligations taken therefor for the license year ending April 30th, previous to that which it desires a license, and the percentage tax should be paid thereon.

"It being necessary for the usual daily financial operation of the municipal government, an emergency is set forth and declared to exist, pursuant to Section 55 of the Charter of the City of Newport News, and this ordinance shall be in effect from the date of its passage." (Emphasis added.)

Subsequent to May 1, 1951, the Commissioner of Revenue of the City forwarded a license questionnaire to the Tele-

phone Company, and not receiving an answer, made an arbitrary assessment against the Company in the sum of $19,130.49 on August 4, 1951. It appeared from the evidence that plaintiff's gross receipts on local exchange service in the City for the year May 1, 1950-April 30, 1951, amounted to $637,683. The assessed value of the real and personal property of the plaintiff in the City is $1,077,532, an assessment made by the State Corporation Commission in the application of State-wide equalizing factors at 40% of the true value of such properties. The facilities of the plaintiff serve both the City of Newport News and the City of Warwick. According to plaintiff's record, its net income, before local taxes, attributable to its local service in Newport News, during the year ending April 30, 1951, amounted to $97,796.

On May 14, 1951, the City Council adopted a resolution authorizing the publication of a proposed franchise ordinance. The terms of the franchise were substantially the same as those submitted to the Council on January 8th, and to the Telephone Company on January 11, 1951. It provided for the payment to the City of 3% of the "gross receipts from local telephone exchange service within the City," and that the grantee should not be exempted "from any license or pole taxes or other taxes and assessments that may be lawfully levied * * * ." It required the Telephone Company to furnish the City with certain free space on its poles and conduits, and certain free telephone service. The proposed franchise was advertised for sale; but no bids were received.

Thereafter, when the City sought to collect the tax imposed by the ordinance, the plaintiff instituted this proceeding in equity. It sought to have the ordinance declared unconstitutional and void, and prayed for an injunction to restrain any interference with its business and operations as a public service corporation. The City filed a demurrer to the bill, raising the question of equity jurisdiction. The trial court sustained the demurrer and dismissed the bill.

On appeal we upheld the trial court in sustaining the demurrer; but held that there was an adequate remedy at law, and remanded the case to be tried on the law side of the trial court and treated as an application for the correction of an erroneous assessment under § 58-1145 of the Code of Virginia, 1950. *The Chesapeake and Potomac Telephone Company of Virginia* v. *City of Newport News*, 194 Va. 409, 73 S. E. (2d) 394.

Following the remand, the City filed an answer and the case was tried on its merits on May 27, 1953. Upon a consideration of the evidence, the trial court entered an order upholding the validity of the ordinance, and dismissed the Telephone Company's application for relief. This appeal brings up for review the validity of that ruling.

There are fifteen assignments of error, which are included in the general contentions next enumerated.

The Telephone Company contends that: (1) the City does not have the power either under the statutes or under its charter to tax its gross receipts; (2) that the ordinance violates the constitutional and statutory plan for the taxation of public service corporations in Virginia; (3) that if considered a privilege tax, it contravenes the Commerce Clause of the United States Constitution; (4) that the tax imposed is arbitrary, excessive and discriminatory, and deprives the Telephone Company of the equal protection of the law in violation of the Fourteenth Amendment of the United States Constitution; (5) that the ordinance does not comply with the terms of the City charter; and (6) that the ordinance is not a *bona fide* tax measure enacted in compliance with the terms of the charter of the City, but was adopted for an ulterior purpose beyond the power of the City Council. In addition, it complains of the admission of certain evidence.

The first question is whether the City had the power and right under its charter and relevant statutes to subject the plaintiff to the license tax imposed by the ordinance.

The City relies upon Sections 104 and 105 of its charter and § 58-266.1 of Virginia Code, 1950.

Section 104* of the City Charter authorizes the Council of the City to levy taxes "annually" by assessments "on all subjects not withheld from city taxation by the state and such subjects as have been, or may be, segregated to the city by the state, for the purpose of taxation, * * * ," and "in such manner as it shall deem expedient (in accordance with the laws of this state, and of the United States); * * * ." Both the method of assessment and the time within the year when the assessment may be made are left to the discretion of the City Council.

The subsequent section, 105, confers the right to levy taxes upon specific subjects "and upon all other businesses and pursuits upon which a license tax is levied by the state and such other businesses as may be lawful."

The net effect of these sections is to confer upon the City the general power to impose a license on a business conducted within its confines, if not withheld from taxation by the legislature, whether or not a license tax is required for the said business by the State. *Standard Oil Company* v. *Fredericksburg*, 105 Va. 82, 52 S. E. 817; *City of Norfolk* v. *Griffith-Powell Co.*, 102 Va. 115, 45 S. E. 889; *McKenney* v. *City Council of Alexandria*, 147 Va. 157, 136 S. E. 588.

The language of Sections 104 and 105 is substantially the same as that found in the charters of other cities of this Commonwealth, and has been repeatedly construed and held to confer upon a city general powers of taxation, including all persons and subjects of taxation, except only as it may be limited by the laws of this State or of the United States. *Newport News etc. Co.* v. *Newport News*, 100 Va. 157, 159, 40 S. E. 645; *Norfolk & Western Ry. Co.* v. *Suffolk*,

*"Sec. 104. For the execution of its powers and duties, the council may raise taxes annually by assessments in said city on all subjects not withheld from city taxation by the State and such subjects of taxation as have been, or may be, segregated to the city by the State, for the purpose of taxation, such sums of money as may be necessary to defray the expenses of the same, and in such manner as it shall deem expedient (in accordance with the laws of this State, and of the United States), * * * ." Acts 1926, Ch. 223, p. 408.

103 Va. 498, 499, 49 S. E. 658; *American Tobacco Co.* v. *Danville*, 125 Va. 12, 18, 99 S. E. 733.

The pertinent portion of Section 58-266.1 is as follows:

"In addition to the State tax on any license, as herein-before and hereafter provided for in this chapter, the council of a city or town may, when anything for which a license is so required is to be done within the city or town, impose a tax for the privilege of doing the same and require a license to be obtained therefor; and in any case in which they see fit they may require from the person licensed a bond, with sureties, in such penalty and with such condition as they may deem proper or make other regulations concerning the same."

This section, contained in Chapter 7 of Code of Virginia, 1950, entitled "Licenses Generally," supplements rather than limits the general power of a city to levy license taxes. It expressly authorizes a city to impose such tax on any business mentioned in Chapter 7, in addition to the State tax levied thereon. It does not limit or curtail the right of a city to impose such tax on any other business whether a license therefor be required by the State or not.

■ We are not impressed with the claim that the ordinance violates Virginia's constitutional and statutory plan for the taxation of public service corporations. It is not contrary to our segregation statutes, sections 58-9 and 58-10, which were enacted pursuant to the provisions of sections 168 and 171 of the Constitution. Neither section of the Constitution segregates any property or subject to the State for taxation purposes. Section 171 restrains the imposition of State taxes on the properties which are thereby "segregated for, and made subject to, local taxation only."

Code, 58-9 allocates all taxable real estate and all taxable tangible property and the tangible personal property of public service corporations (except rolling stock of corporations operating railroads by steam), and also the capital of merchants "to local taxation only." Code, § 58-10 provides that "Insurance taxes, licenses on insurance companies, tax-

able intangible personal property, * * * and all other classes of property," not specifically enumerated in the preceding section shall be segregated "to State taxation only." The reservation to the State "*of all other classes of property*" not specifically enumerated in the preceding section, is not a reservation "*of all other subjects of taxation,*" a much broader term. Excise and privilege taxes are not property taxes and hence are not included in the general reservation to the State. *Fallon Florist* v. *City of Roanoke*, 190 Va. 564, 584, 58 S. E. (2d) 316.

The tax imposed under the April 30th ordinance is, in fact and effect, just what the Council of the City of Newport News said it was, a privilege tax and not a property tax. *Scottish Union Insurance Co.* v. *Winchester*, 110 Va. 451, 66 S. E. 84; *Bradley* v. *City of Richmond*, 110 Va. 521, 66 S. E. 872; *Railway Express Agency, Inc.* v. *Commonwealth*, 347 U.S. 359, 74 S. Ct. 558, 564, 98 L. ed. 757; *Railway Express Agency, Inc.* v. *Commonwealth*, 196 Va. 368, 83 S. E. (2d) 421.

■ Plaintiff contends that statutory provisions for the taxation of water, heat, light and power corporations, Code, § 58-603, and for railway and canal corporations, Code, § 58-519, evidence a general plan for the taxation of public service corporations, whereby the gross receipts of such corporations are, for purposes of taxation, allocated to the State.

Section 58-603, as originally enacted, Acts 1910, page 90, *et seq.*, required water, heat, light and power corporations to pay to the State an annual State franchise tax equal to one per centum of their gross receipts which, with other taxes therein provided for, should be "in lieu of all taxes or license charges whatsoever upon the franchises of such corporation, and the shares of stock issued by it, and upon all of its property, as hereinbefore provided; provided * * *." The section was amended by Acts of 1912, page 664, *et seq.*, so as to reduce the State tax to one-half of one per centum and to limit cities and towns to the levy of such tax not ex-

ceeding one-half of one per centum of the gross receipts of such business accruing in cities or towns. The amendment was not a grant of a power to cities and towns to tax, but a limitation of their general power.

Section 177 of the Constitution and § 58-519 of the Code provide that the payment of an annual State franchise tax upon the gross receipts by a railway or canal corporation shall be in lieu of all other taxes or license charges whatsoever upon the franchise of such corporation, the shares of stock issued by it, and upon its other property, as therein provided.

Section 169 of the Constitution provides that, "So long as the State shall levy upon any public service corporation, other than a railway or canal corporation, a State franchise, license, or other tax, based upon or measured by its gross receipts, or gross earnings, or any part thereof, its real estate and tangible personal property shall be assessed by the State Corporation Commission, or other central State agency, in the manner prescribed by law." This section does not relate to or prohibit license taxation by local communities for the privilege of doing business.

From the above it is evident that whenever it has been deemed proper to limit the general power of taxation of a city, the limitation has been expressly provided in the Constitution or by statute. There is no provision in the Constitution or in the statutes inhibiting a city or town from levying a license tax measured by a percentage of the gross receipts of a telephone company for the privilege of doing business in such city or town. See *Langston* v. *City of Danville*, 189 Va. 603, 606, 54 S. E. (2d) 101, and authorities there cited. If the legislature had intended to withhold or limit the power of a city to impose such tax on a telephone company, it could have done so by appropriate provision. We do not think that the cited constitutional and statutory sections set a pattern restraining cities and towns from imposing on public service corporations, as such, any license tax measured by their gross earnings. The provisions therein

relate only to the types of corporations specifically named, and the restrictions therein contained merely limit cities and towns to the extent specified.

■ It is clear that the ordinance does not violate the Commerce Clause of the Federal Constitution. The tax is restricted to receipts from intrastate business done exclusively in the City of Newport News, that is, from local service. All interstate business and all business done for the Government of the United States, its officers or agents, is expressly excluded. Receipts from intrastate and interstate commerce are readily severable. There is no attempt to tax, regulate, or hinder interstate commerce. *Postal Telegraph-Cable Co.* v. *City of Norfolk*, 101 Va. 125, 43 S. E. 207.

There is no merit in the claim that the ordinance prohibits the Telephone Company from doing any business, interstate or intrastate, in the City without paying the license tax prescribed. The ordinance read in its entirety clearly shows that it applies only and exclusively to the conduct of intrastate business in the City of Newport News.

■ Plaintiff contends that the City has arbitrarily singled it out for discriminatory treatment as compared with other public utilities in the City of Newport News, and that the tax is excessive, in comparison with its earnings and the earnings of other public service corporations. It is a general principle that in fixing the amount of the tax a legislative body is given considerable discretion, and that every presumption is in favor of the reasonableness of the tax. License taxes are not ordinarily strictly equal and uniform. Uniformity is required only in the same business. The discretion of the legislative body in fixing the tax will not be disturbed in the absence of abuse, and the burden of proving abuse is upon the party attacking it. *Langston* v. *City of Danville*, 189 Va. 603, 610, 54 S. E. (2d) 101; *Fallon Florist* v. *City of Roanoke, supra*, 190 Va. page 590.

In *Bradley* v. *City of Richmond, supra*, 110 Va. page 525, we said with reference to the discretion given to the lawmaking body under its power of taxation that: "If the power

is exercised in an unwise, unjust and oppressive manner, to any particular class, the remedy, within constitutional bounds, is by an appeal, not to the Courts, but to the justice and patriotism of the representatives of the people."

The comparison of the tax levied against the plaintiff with that levied against other public utilities in Newport News does not appeal to us as being helpful. As was said in *Caskey Baking Co.* v. *Commonwealth*, 176 Va. 170, 10 S. E. (2d) 535, 313 U. S. 117, 121, 61 S. Ct. 881, at page 883, 85 L. ed. 1223: "Some occupations may be taxed though others are not. Some may be taxed at one rate, others at a different rate. Classification is not discrimination. It is enough that those in the same class are treated with equality."

In *City of Richmond* v. *Commonwealth*, 188 Va. 600, 607, 50 S. E. (2d) 654, the following quotation is approved:

"The power of taxation is fundamental to the very existence of the government of the States. The restriction that it shall not be so exercised as to deny to any the equal protection of the laws does not compel the adoption of an iron rule of equal taxation, nor prevent variety of differences in taxation, or discretion in the selection of subjects, or the classification for taxation of properties, businesses, trades, callings or occupations."

"The fact that only one person, firm, or corporation falls within a class upon which a license tax is imposed, does not of itself make the tax amenable to the charge of discrimination." *Standard Oil Co.* v. *Fredericksburg, supra*, 105 Va. page 95.

We do not agree with the argument that the ordinance violates Sections 74 and 75 of the City charter, which relate, respectively, to the preparation of the annual budget and the adoption of an annual appropriations ordinance. The complaint is based on the ground that the charter forbids the imposition of taxes in excess of budget requirements, and that in the present case the taxes necessary to meet the budget requirements had been provided for in the budget adopted prior to April 30, 1951. The amounts and items

contained in the annual budget and the annual appropriation ordinances were matters within the discretion of the City Council. It was for it to determine the necessary amount of taxes and licenses required to operate the City and pay its expenses.

Nor are we impressed with the complaint that the ordinance was not a *bona fide* tax measure, because it was devised as a part of a plan to coerce the Telephone Company to bid on a franchise which it thought contained burdensome terms. There was a difference of opinion as to the effect of the terms and provisions of the proposed new franchise. It is the amount of the tax imposed by the ordinance of April 30, that constitutes the principal cause of the complaint here. That complaint should be addressed to the City Council, the legislative body that fixed the rate.

It is not for us to seek for motives or criticize the public policy which prompted the adoption of the ordinance. Nor are we concerned with the criticism of the conduct of the City Manager of Newport News. He had no voting rights with reference to the legislation; but was required, under the provisions of the City Charter, to recommend to the Council for adoption such measures as he might deem necessary or expedient.

"Courts are not concerned with the motives, which actuate members of a legislative body in enacting a law, but in the results of their action. Bad motives might inspire a law which appeared on its face and proved valid and beneficial, while a bad and invalid law might be, and sometimes is, passed with good intent and the best of motives." *Blankenship* v. *City of Richmond*, 188 Va. 97, 105, 49 S. E. (2d) 321.

In *Railway Co.* v. *Llewellyn*, 156 Va. 258, 276, 157 S. E. 809, the following statement is quoted with approval from *Hamilton* v. *Kentucky Distilleries*, 251 U. S. 146, 40 S. Ct. 106, 64 L. ed. 194:

"No principle of our constitution is more firmly established than that this court may not, in passing upon the

validity of a statute, inquire into the motives of Congress. Nor may the Court inquire into the wisdom of the legislation. Nor may it pass upon the necessity for the exercise of a power possessed, since the possible abuse of a power is not an argument against its existence."

Over the objection of plaintiff, the City was permitted to introduce evidence as to license and franchise tax payments made by plaintiff to the Cities of Portsmouth, Roanoke, Norfolk and Richmond for the years 1950 and 1951*.

Objections to this evidence were based on the grounds that what was done in other cities had no bearing on the situation in Newport News; and that there were many varied factors and conditions in the several cities which made the comparison misleading. The answer to the objection is that the appellant, in support of its case, presented evidence showing its total receipts in the State of Virginia, its total net income, and what percentage of its total gross receipts was represented by gross receipts from local service in Newport News, and what net income was attributed to local service in Virginia, in the attempt to prove that the tax in Newport News was out of proportion to its taxes paid to the State as a whole. We agree that varying factors prevent a perfect comparison.

The evidence was informative, but it was not determinative of the reasonableness of the Newport News license. It does show that the license of Newport News is not out of line with that assessed in other cities. Regardless of the questioned evidence, it was not, in our opinion, shown that the license tax of which plaintiff complains is prohibitive or destructive of its business.

What we have said disposes of all of the material questions raised. Upon the whole case, we are of opinion that the

| * "City | Year—1950 | Year—1951 |
| --- | --- | --- |
| Portsmouth | $ 32,409.00 | $ 35,155.00 |
| Roanoke | 47,266.00 | 49,629.00 |
| Norfolk | 120,340.00 | 125,909.00 |
| Richmond | 193,324.00 | 200,123.00" |

ordinance of April 30, 1951, was a legitimate exercise of the municipal power of the City of Newport News, and not in conflict with the Constitution and laws of either this State or the United States, and consequently the order of the trial court so holding is affirmed.

*Affirmed.*