# Richmond

## City of Newport News v. The Chesapeake and Potomac Telephone Company of Virginia.

January 21, 1957.

Record No. 4625.

Present, Hudgins, C. J., and Eggleston, Spratley, Buchanan, Miller and Whittle, JJ.

The opinion states the case.

*Harry L. Nachman* (*Bert A. Nachman,* on brief), for the appellant.

*T. Justin Moore* (*George D. Gibson, John W. Riely, Stephen H. Fletcher, H. H. Walker Lewis, Hunton, Williams, Gay, Moore & Powell,* on brief), for the appellee.

*Oscar L. Shewmake* and *John C. Goddin,* on brief, for Virginia Farm Bureau Federation, Intervenor.

BUCHANAN, J., delivered the opinion of the court.

This is an appeal from an order of the State Corporation Commission amending the General Exchange Tariff S. C. C.-Va.-No. 1 of The Chesapeake and Potomac Telephone Company of Virginia so as to provide, for use in this State with respect to all bills rendered on and after January 15, 1956, as follows:

"When a political subdivision of the state charges the company a license tax or franchise fee at a flat rate or based on receipts or based on poles, wires or conduits, such taxes and fees will be billed pro rata to the exchange customers receiving service within the political subdivision, if the aggregate amount of such taxes and fees exceeds one-half of one per cent of the aggregate bills of such customers for exchange service.

"Excluded from the foregoing adjustment are all franchise fees fixed by contract between the company and the locality before 1956."

In *Chesapeake & Potomac Tel. Co.* v. *Newport News,* 196 Va. 627, 85 S. E. 2d 345, decided January 17, 1955, we held to be valid an ordinance of the City of Newport News adopted on April 30, 1951, levying a license tax of 3 per cent of the company's gross receipts from business done in the city. On May 3, 1955, on application by

the company and after a hearing at which Newport News and others appeared in opposition, the Commission approved an amendment to the company's tariff providing that a license tax based on gross receipts should be charged to exchange customers in the political subdivision imposing such tax. Thereafter the City on October 3, 1955, adopted an ordinance imposing a flat annual license tax of $30,000, which was about the same amount as would be realized from the 3 per cent tax on gross receipts.

Thereupon, on November 7, 1955, the company filed a further application for an amendment to its tariff so as to provide that its rate schedules should not include any license tax, however measured, or any pole, wire, conduit or similar street use tax or exaction, but "insofar as practicable" any such tax or exaction would be billed to its exchange customers in the political subdivision imposing it. After due notice a hearing was had on that application on December 14, 1955, at which the cities of Newport News, Norfolk and Portsmouth and Henrico County appeared by counsel in opposition. Following the hearing the Commission entered its order disapproving the amendment applied for by the company, but approving an amendment in the language above quoted. The Virginia Farm Bureau Federation appeared before the Commission in favor of the application and on this appeal has filed a brief in support of the Commission's order.

The City of Newport News prosecutes this appeal and in its assignments of error asserts that the order so entered exceeds the constitutional and statutory authority of the Commission; that the order is arbitrary and without evidence to support it; and that it is discriminatory and an unreasonable exercise of the Commission's authority.

■ The Constitution of Virginia provides that the Commission is "a department of government" (§ 156-a) and gives it the power and charges it with the duty of supervising, regulating and controlling all transportation and transmission companies doing business in this State, in all matters relating to the performance of their public duties and their charges therefor; and requires that it shall prescribe and enforce "such rates, charges, classifications of traffic, and rules and regulations * * as may be reasonable and just;" and the authority of the Commission, subject to appeal, to prescribe rates, charges and classifications of traffic for transportation and transmission companies "shall be paramount;" but its authority "to prescribe any other rules,

regulations or requirements for corporations or other persons shall be subject to the superior authority of the General Assembly * *." (§ 156-b)

Section 56-478 of the Code provides that the Commission shall supervise, regulate and control all telephone companies doing business in this State in all matters relating to their public duties and their charges therefor, and shall establish such rates, charges, rules and regulations as may be reasonable and just; and § 56-480 directs that the Commission "as often as circumstances may require," shall change and revise any schedule of rates and charges, rules, regulations or requirements so established.

In matters pertaining to the establishment of rates and charges of transmission and transportation companies, the Commission exercises a purely legislative function, and so far as such matters are concerned it is the legislative branch of the government. *Norfolk* v. *Chesapeake, Etc., Tel. Co.,* 192 Va. 292, 300, 64 S. E. 2d 772, 776. Its power in this connection is not limited merely to the change of a particular rate, but includes "the power to change, under certain conditions, any part of a filed schedule, rate, rule or regulation that in any manner affects the rates charged or to be charged." *Norfolk* v. *Virginia Electric, Etc., Co.,* 197 Va. 505, 516, 90 S. E. 2d 140, 148.

The power of the Commission to enter an order of the kind involved on this appeal seems clear. The constitutional limitation on this power is that the requirements of the order shall be "reasonable and just." On this issue we are required to regard it as prima facie just, reasonable and correct. Const., § 156 (f).

[■ The opinion of the Commission giving its reasons for its action (Const., § 156-f) was written by Commissioner Catterall and concurred in by Commissioners Hooker and King, the other two members. Its reasoning runs thus:

A corporation whose rates and charges are fixed by law is entitled to collect from the consumers enough gross income to pay all its expenses, which include taxes. The taxes paid by the company to a locality are used by the locality for the benefit primarily of the people who live there. If a locality can levy taxes that are paid mostly by people who do not live and vote there, self-interest will persuade it to rely on such taxes for the support of local government. When the legislature confers on a municipality the general power of taxation it grants all the power possessed by itself in respect to the imposition of taxes, and just as the General Assembly is the judge of

what taxes are necessary and expedient to meet the needs of the Commonwealth, so the local legislature is the judge of what taxes may be levied within the limits of its delegated authority. *Fallon Florist* v. *Roanoke*, 190 Va. 564, 577-8, 58 S. E. 2d 316, 322. No constitutional or legislative maximum has been placed on the amount of a validly imposed tax. If Newport News could levy a 3 per cent gross receipts tax on the company, as held in *Chesapeake & Potomac Tel. Co.* v. *Newport News* (*supra*, 196 Va. 627, 85 S. E. 2d 345), it could impose a much higher tax. The only practical limitation on the taxing power lies in the restraint exercised on the taxing authorities by those who elect them to their office. It is unfair to allow a municipality to collect from the telephone company a very high tax which would in large part be paid by telephone users in other parts of the State. It is reasonable and just, in order to prevent this, to allow the telephone company to charge the tax back to the customers in the political subdivision imposing it if it exceeds a fixed rate.

The opinion states: "The one-half of one per cent limitation prescribed by the order is to keep the order from interfering with the sort of moderate taxes and fees that have been levied for the past half-century without any thought on the part of the locality of making outsiders bear substantial local tax burdens. The order does not apply to franchise fees based on pre-existing contractual arrangements. Those arrangements were entered into voluntarily, and are in the nature of payments for easements. It would not, in our opinion, be reasonable and just to upset them at this late date. The order does apply to future voluntary franchise agreements in order to keep the company from discriminating voluntarily between localities. As a matter of fact, the company has not voluntarily agreed to any franchise fees measured by receipts for many years. * *."

Analogous legislation by the General Assembly, it is said, is found in § 58-603 of the Code permitting cities and towns to impose on water or heat, light and power companies a license tax of not exceeding one-half of one per cent of gross receipts from business done in the city or town.

The reasoning thus employed refutes the charge that the action of the Commission was arbitrary and without evidence to support it. The Commission has always fixed telephone rates on a statewide basis, as do the great majority of other State Commissions. *Board of Supervisors* v. *Commonwealth*, 186 Va. 963, 976, 45 S. E. 2d 145, 151. A license tax on a public utility such as a telephone company excites

less public concern than direct taxes on property owned by the citizens. It is not subject to the same restraints and involves less accountability on the part of the taxing authority. It readily lends itself to the uses of the taxing authorities in a municipality, for example, who would relieve their citizens of some of the tax burdens incident to municipal government. It could be imposed in a sufficient number of political subdivisions and in such varying amounts as to affect seriously the task of fixing a fair rate on a statewide basis. To a political subdivision it has the attraction of having citizens living in other places contribute to its payment. The result is a form of taxation without representation, which has aroused historic protest in this country.

It appears that the occasion for the present application was the move by Newport News and a few other political subdivisions to escape the effect of the amendment to the company's tariff schedule allowed by the Commission on May 3, 1955, permitting gross receipts taxes to be charged to the exchange customers in the political subdivision which imposed the tax. While the change to a flat license tax has not in other localities approached the amount levied by Newport News, it was testified that there had been increases in the flat tax in several communities.

The city argues that since the evidence shows that the license taxes paid by the company to various municipalities in the State were included in operating costs when the last increase in telephone rates was granted to the company in 1954, it is therefore unjust to allow company revenue to be increased in the manner allowed by the Commission's order without any evidence that it is needed or justified.

It was testified that the total amount of taxes that would be added to customers' bills as a result of the amendment proposed by the company (which was disapproved by the Commission as proposed) would be about sixty-seven thousand dollars, based on the year 1955. That amount would increase the company's rate of return under its general exchange tariff, according to the evidence, by less than two one-hundredths of one per cent of net earnings. While the amount is not pin money even in the present era, it is not such an increase in the company's revenues as would make its present rate schedule unreasonable or unjust. The amount, too, should be materially reduced by the requirement that the company itself pay and not pass on to its customers in the political subdivision one-half of one per cent of such license taxes.

The application of the company was not for a general rate increase with all the elements involved in that problem. The Commission was not required to review the entire rate structure in ruling on the proposal submitted by the present application. *Cf. Norfolk v. Virginia Electric, Etc., Co., supra,* 197 Va. 505, 90 S. E. 2d 140. The genesis of the application and what the Commission dealt with was what appeared to be, judging from the experience related by the company's witness, a growing tendency on the part of municipalities to increase their license levies, influenced by the inviting prospect that the resulting tax bill would be paid in substantial part by the customers of the company residing in other parts of the State.

The principle adopted in the Commission's order is not new or revolutionary. As pointed out in its opinion, the public utility commissions of a number of other States have expressed the same views or dealt in similar fashion with respect to local license taxes imposed by their political subdivisions.*

The Commission stated in the conclusion of its opinion that the charges authorized by its order to be added to the bills of the company's local customers "place the added burden on those who should bear it and prevent each locality from upsetting the state-wide system of rate-making for its own advantage and to the disadvantage of consumers living outside the taxing locality." It is within the constitutional and statutory powers of the Commission to accomplish that result.

As the order of the Commission is phrased, however, we think it is not reasonable and just in this particular: It provides that the license tax or franchise fee will be billed to the exchange customers *if* the aggregate amount thereof exceeds one-half of one per cent of the aggregate bills of such customers. The corollary is that if the aggregate amount of such taxes and fees does not exceed one-half of one per cent it will not be billed to the exchange customers but the company must pay it. In other words, if one political subdivision charges the company a tax which does not exceed one-half of one per

---

*Michigan (14 P.U.R.N.S. 36; 16 P.U.R.N.S. 9); California (P.U.R. 1922 A, 277); North Carolina (7 P.U.R.N.S. 21); Washington (37 P.U.R.N.S. 321); Utah (94 P.U.R.N.S. 88); Missouri (10 P.U.R. 3d 70); Nevada ( P.U.R. ), decided Feb. 10, 1956); Colorado (14 P.U.R. 3d 105).

See also *City of Elmhurst* v. *Western United Gas, Etc., Co.,* 363 Ill. 144, 1 N. E. 2d 489; *State* v. *Dept. of Public Utilities,* 33 Wash. 2d 896, 207 P. 2d 712; *Ogden City* v. *Public Service Commission,* (Utah), 260 P. 2d 751; *Ogden City* v. *Public Service Commission,* (Utah), 260 P. 2d 754.

cent, the company pays it; but if another political subdivision charges more than one-half of one per cent the exchange customers pay the whole bill. The order thus puts a penalty on a political subdivision which imposes a tax greater than the fixed maximum, whereas all other political subdivisions which do not exceed the fixed maximum suffer no such penalty. This result is inconsistent with the stated purpose of the Commission to keep the order from interfering with the sort of moderate taxes and fees that have been levied for the past half-century. It is not the function of the Commission, nor is it within the powers given it by the Constitution and statutes, which are all the powers it has, to interfere with or legislate with respect to the limits of municipal taxation.

The order of the Commission will be modified and made to read as follows:

"26. ADJUSTMENTS FOR CERTAIN LOCAL TAXES AND FEES.

"When a political subdivision of the State charges the company a license tax or franchise fee at a flat rate or based on receipts or based on poles, wires or conduits, so much of the aggregate amount of such taxes and fees as exceeds one-half of one per cent of the aggregate bills of such customers for exchange service will be billed pro rata to the exchange customers receiving service within the political subdivision.

"Excluded from the foregoing adjustment are all franchise fees fixed by contract between the company and the locality before 1956."

As so modified the order of the Commission is affirmed.

*Modified and affirmed.*