PUBLIC UTILITY — FRANCHISE TAX PAYMENT TO CITY — LAWS REGARDING There are both constitutional and statutory provisions bearing upon the question of whether a public utility power company may rightfully withdraw its voluntary one percent (1%) franchise tax payment and discount granted by it to cities on the cost of electrical service to the city itself. The Attorney General has considered your request for an opinion contained in your letter dated March 17, 1971, in regard to the following question: "Are there either constitutional or statutory provisions which would bear on whether a public utility power company may withdraw its voluntary one percent (1%) franchise tax payment on gross receipts, and the discount on the cost of electrical services provided to the municipality itself, to one city or locale being served by the utility?" Also, in your letter you set out the following fact situation as it was related to you: "Public utility power companies within the State of Oklahoma pay a two percent (2%) franchise tax on gross receipts pursuant to the provisions of their franchise agreement, or the provisions of the applicable City Charters. In addition to this two percent (2%) franchise tax, the public utility power companies are paying an additional one percent (1%) franchise tax to cities and towns on a voluntary basis in consideration of being granted exclusive distribution rights within the franchise area. "As an additional consideration for the granting of exclusive distribution rights, the public utility power companies have negotiated, with the cities and towns served, discounts on the cost of electrical services to the municipality itself." The following is a discussion of the constitutional and statutory provisions which bear on the question of whether a public utility power company may withdraw the voluntary one percent (1%) franchise tax payment on gross receipts, and the discount on the cost of electrical services provided to municipalities being served by the utility. Article X, Section 12 provides that the Legislature shall have the power to provide for the levy and collection of license, franchise, gross revenue, and other taxes. However, Article X, Section 20 provides that the Legislature shall not impose taxes for the purpose of any county, city, town, or other municipal corporation, but may, by general laws, confer upon the proper authorities thereof, respectively, the power to assess and collect such taxes. The word "purpose" used in Article X, Section 20 of the Oklahoma Constitution is descriptive of the primary object or end sought to be accomplished by the constitutional prohibition. In this regard, see Pawnee County Excise Board v. Kurn, 101 P.2d 614
(Okla., 1940). Thus it would appear that if the purpose of any tax is to benefit a county, city, town or other municipal corporation, the Legislature may not impose such taxes, but may confer upon the proper authorities the power to assess and collect such taxes. It also appears from our State Constitution and Statutes that municipalities have the power, following the approval by a majority of the qualified electors, to grant franchises, and the power to levy and assess taxes upon the residential and commercial sales of power, light, heat, gas, electricity or water. Article XVIII, Section 5(a) provides, in substance, that no municipal corporation shall ever grant, extend, or renew a franchise, without the approval of a majority of the qualified electors residing within its corporate limits, and that the legislative body of the municipality may submit any such matter for approval of the qualified electors. Article XVIII, Section 7 provides that no exclusive franchise shall ever be granted. From reading the provisions of Article XVIII, Section 7, and the case decisions cited thereunder, it appears that the only rights or privileges granted by the giving of a franchise to a utility company is the permission to use the streets, alleys, or other public grounds or ways of the municipality for easement purposes. The provisions of 68 O.S. 2601 [68-2601] (1961) provides, in substance, that the governing body of any city or town is vested with the power to levy and assess, by ordinance, an annual tax upon the gross receipts from residential and commercial sales of power, light, heat, gas, electricity or water in an amount not to exceed two percent (2%) of the gross receipts of such sale, and that the imposition of such a tax shall be in lieu of any other franchise, license, occupation or excise tax levied by the city or town. 68 O.S. 2602 [68-2602] (1961) provides that the two percent (2%) tax on gross receipts shall not be applied to any person, firm, association or corporation operating under a valid franchise from any city or town. It is reasonable to assume that any public utility power company wishing to obtain a franchise from a city, as a practical matter, would have to be willing to agree to pay the two percent (2%) annual tax upon gross receipts if they wish to be granted a franchise. Otherwise, there would be no advantage to the municipality in granting the franchise. The municipality would merely lose its right to impose the two percent (2%) annual tax upon gross receipts by the granting of the franchise. After the public utility power company has secured a valid franchise, it would no longer be obligated to pay the annual two per- cent (2%) tax on gross receipts, unless it were obligated to do so under the contractual provisions of its franchise agreement. There is no like reasoning which can be applied to the additional "voluntary" payment of one percent (1%) of annual gross receipts, or the discount granted to the municipality on the cost of electrical services provided to it. The origin of these payments, or the reasoning behind them, is not explained by your letter or the case decisions and Statutes of the State, except that they are paid in consideration for the public utility power company's being granted an exclusive franchise If the sole consideration for the payment of the one percent (1%) of gross receipts, and the discount on electrical services furnished the municipality, is the obtaining of an exclusive franchise from the municipality, the contract would have to fail for illegality of purpose for the following reasons. Article II, Section 32 provides: "Perpetuities and monopolies are contrary to the genius of a free government, and shall never be allowed, nor shall the law of primogeniture or entailments ever be in force in this State." Article XVIII, Section 7 provides: "No grant, extension, or renewal of any franchise or other use of the streets, alleys, or other public grounds or ways of any munici pality, shall divest the State, or any of its subordinate subdivisions, or their control and regulation of such use and enjoyment. Nor shall the power to regulate the charges services be surrendered; and no exclusive franchise shall ever be granted." (Emphasis added) The Supreme Court of Oklahoma in the case of Tulsa v. Thomas, 214 P. 1070 (Okla., 1923) held that ArticleXVIII, Section 7, of the Oklahoma Constitution, prohibits the granting of an exclusive franchise in this State, and an ordinance which in practical effect grants such a franchise is void. In the body of its opinion, on page 1073, the Court states as follows: "From an examination of the record and the evidence of the Commissioners for the City of Tulsa, we are thoroughly convinced that the ordinance in question was intended for the purpose of conferring upon the Tulsa Street Railway Company an exclusive franchise to run buses over the territory and routes traversed by the plaintiffs. This was practically admitted by the City officials and was, in itself, an expression of an intention to violate the Constitution of this State (Article XVIII, Section 7),. . . "When any ordinance is passed with such an intent, it has been the consistent holding of the courts that it will not be upheld when attacked. . .to say that the broad power of passing upon the right of a person to conduct a certain business of a legitimate nature should be left to the whim and fancy of any individual or group of individuals is contrary to every cannon and foundation stone of our form of government." Another case in point is Territory ex rel Oklahoma Gas Electric Company v. DeWolfe, 74 P. 98 (Okla., 1903). The plaintiff, Oklahoma Gas Electric Company, obtained a franchise from the City of Oklahoma City empowering it to lay gas mains in the streets and alleys of Oklahoma City. Thereafter, the City Council granted to the defendant, DeWolfe, a franchise empowering him to lay pipes in the streets of Oklahoma City for the purpose of furnishing gas to the City and its inhabitants. Oklahoma Gas Electric Company brought a suit to enjoin and restrain the defendant from laying gas pipes in the streets and alleys of Oklahoma City. The Court, in the body of its opinion, stated: "By act of Congress approved on July 30, 1886 (24 Stat. 170, c. 818) it is provided: 'That legislators of the territories of the United States now or hereafter to be organized shall not pass local or special law in any of the following enumerated cases; that is to say:. . Granting to any corporation, association, or individual any special or exclusive privilege, entity or franchise whatever.' " Later in its opinion, the Court stated as follows: ". . .it cannot be disputed that the City Council could only grant such privileges and rights as, under the law, they were permitted and authorized to grant; and the statement that the realtor plaintiff would be damaged by the depreciation in the value of its plant and the market value of its property was also a matter which of necessity must have been taken into consideration by the realtor when it took its franchise. The undoubted purpose of the statutes above quoted was to take from cities the right to grant a franchise and make a contract which would give the exclusive right and privilege to a single person or company or corporation, and thereby shut out the possibility of competition; and, if the realtor is damaged by reason of competition which is authorized by the laws, and his property thus depreciated in value, it would certainly not be sufficient reason to maintain an action, the object of which is to prevent competition, and avoid the force and effect of the provisions of the statutes quoted." Based upon the above cited and quoted constitutional provisions, statutory provisions and case decisions it naturally follows that any contract between a public utility power company and a municipal corporation must fail and be unenforceable when the sole consideration passing from the municipalitY to the utility is a granting of an exclusive franchise. Any contract which has as its intended purpose the conferring of an exclusive franchise must fail because of illegality of purpose under the above cited and quoted constitutional provisions, statutory provisions and case decisions. There are additional serious legal problems raised by the granting or withdrawing of certain payments and discounts to one municipality without uniformly granting or withdrawing the same payments or discounts to all other municipalities being served by the public utility power company. 79 O.S. 4 [79-4] (1961) provides in part as follows: ". . .And it is hereby declared to be the duty of any person, firm, or corporation engaged in any public business to render its services and offer its commodities or either upon reasonable terms without discrimination and adequately to the needs of the public, considering the facilities of said business." (Emphasis added) 79 O.S. 2 [79-2] (1961) provides in part as follows: "It shall be unlawful for any. . .corporation, engaged in the production, manufacture, distribution, purchase or sale, of any commodity of general use, or rendering any service to the public. . . to directly or indirectly, . . . discriminate between different persons, associations or corporations, or between different sections, communities or cities of this State; "(A) By selling such commodity, or rendering such service at a lower price or rate in one section, community or city than another. . .If the effect or intent thereof is to establish or maintain a virtual monopoly hindering competition or restraining trade. . .or to prevent the competition of any person, who, in good faith, intends and attempts to become such dealer. . ." In the case of Consumers Light and Power Company v. Phipps,251 P. 63 (Okla., 1926) the Supreme Court of the State of Oklahoma stated on page 65 of the body of the opinion: "Under the common law, it was the duty of all persons engaged in a 'public business' to treat all members of the public fairly and without discrimination and to serve all who are similarly situated or in the same class on equal terms and at reasonable rates." Given the situation of a public utility operating on a system wide rate structure, an issue is raised as to whether the granting of franchises and discounts to one community and not granting the same payments to other communities being served by the utility would constitute unjust or undue discrimination against the rate payers residing in the city or cities which do not receive equal or nearly equal benefits back from the utility company and yet are charged on the same rate structure. I t is a well established principle of law that a public utility is entitled to recover, in charges for its services, all expenses including franchise taxes or fees incurred in rendering the services. It is an equally well established principle that the taxes imposed on a utility by one local governmental unit for the benefit of its own citizens should, insofar as practical, not be spread over the customers of the utility living outside of that governmental unit. These established principles of law are supported by the following cases. Ogden City v. Public Service Commission, 260 P.2d 751
(Utah, 1953); Ogden City v. Utah Public Service Commission, 260 P.2d 754 (Utah, 1953); State ex rel Pacific Telephone and Telegraph Company v. Department of Public Service, 142 P.2d 498 (Washington, 1943); State ex rel City of Seattle v. Washington Department of Public Utilities, 207 P.2d 712 (Washington, 1949); City of Newport News v. Chesapeake and P. Telephone Company of Virginia, 96 S.E.2d 145 (Virginia, 1957); City of Elmhurst v. Western United Gas and Electric Company,1 N.E.2d 489 (Illinois, 1936). In the case of Missouri ex rel City of West Plains v. Missouri Pub- lic Service Commission, 310 S.W.2d 925 (Missouri, 1958), the Court made a finding that a utility's practice of charging local license and occupation taxes to system-wide rate payers constituted unjust discrimination and that such finding was supported by evidence that wide differences in such taxes existed among the localities within the system and that the only beneficiaries of a given local tax were the residents of the particular locality. In the case of Southeastern Land Company v. Louisville Gas and Electric Company, 90 S.W.2d 1 (Kentucky, 1936), the Court held that public utilities may not discriminate nor impose different terms and conditions on different persons. That a public utility company may not accomplish by indirection what it is forbidden to do directly. That rebates resulting in lower rates to one class of customers of electricity and is paid by another is in violation of contractual guarantee of uniformity of rates. In the body of the Court's opinion it stated: "The ordinance and contract as well as the law of the land which is imbedded in a sound public policy forbids actual inequalities or discrimination in the character of service furnished by public utilities or in charges therefor. And what the utility is forbidden to do directly, it may not accomplish by indirection by way of resort to any device or subterfuge leading to the same result. If a utility company receives a fair return upon its capital investment, any discrimination in the form of rebates, free service, or inequality in rates will necessarily result in the less favored customer paying not only for his own service, but also for that of the patron receiving unwarranted concessions." One consistent line of thinking which runs through all of the above cited cases is that it is unfair and unjust to spread the burden of special license fees, franchise fees, discounts or taxes upon consumers residing outside the limits of the municipalities imposing them. Further, it is even more inequitable for consumers residing in municipalities which do not impose any license fees, franchise fees, discounts or taxes to pay any portion of such taxes, fees or discounts exacted by or granted to other municipalities. Another central thought which runs throughout all of time above cited cases is that if the consumers within a city are required to bear the special tax burdens, franchise fees received and discounts obtained by that city, those consumers will exercise the necessary influence upon the City Officials to keep such special taxes, fees and discounts within reasonable limits or eliminate them entirely as revenue raising measures. There seems to be only two permitted solutions in attempting to avoid unjust or undue discrimination to rate payers where there is a material difference between the franchise fees or taxes and discounts granted to different communities being served by the same public utility company, where the utility is operated on a system-wide rate structure. (1) In order to avoid undue or unjust discrimination among rate payers, there must be no material differences between the franchise fees or taxes and discounts granted the different communities served by the public utility company. (2) If the utility is operated on a local unit rate structure, the consumers living within the cities that receive materially higher franchise fees and discounts or exact higher taxes than other cities, must bear their pro rata share of the higher taxes, fees and discounts. To do otherwise would constitute undue discrimination against those consumers residing outside the cities receiving the higher fees, taxes and discounts since they receive no benefit from the tax, fees or discounts. The second suggestion is more equitable. There is the advantage of immediately imposing upon rate payers in any community which elects to derive revenue from such a higher tax, franchise fee or discount, the burden of providing those dollars. Conversely, whenever any such tax, franchise fee or discount is repealed by any of the cities receiving it, the consumers in question will be relieved automatically and concurrently of the burden which has been imposed upon them by their own municipalities. A good explanation of the reasoning behind this solution is found in Re Byron Telephone Company, 56 Public Utilities Reporter 3rd, Page 483 (Georgia, 1964). In the Byron Telephone Company case, supra, the Georgia Public Service Commission held that the recoupment of municipal taxes by a telephone company should be made from the customers within the taxing municipality rather than permit the loading of such additional taxes onto the rates paid by customers in other localities, and that this could be effectuated by establishing the level of license and franchise taxes which the company must pay out of approved tariff rates, graduated according to the number of subscribers within the particular municipality, and requiring that any additional license or special tax be incorporated into the rate structure by adding it pro rata to the bills of the customers within the municipality imposing the tax. Several states require all utility bills to show as a separate item the consumer's pro rata share of occupation taxes or excise taxes levied against the consumers by reason of ordinances enacted by the municipality whereby revenue-raising taxes or payments are exacted from the public utility company operating within the municipality. The practical effect of a franchise agreement between a municipality and a public utility company which provides for payments to the city in excess of that required to be exacted by the city by means of taxation, is the levying of a revenue raising tax by the city and collecting of that tax by the utility, with the payment of such taxes being borne by the rate paying consumers. When such payments and discounts are made by the utility company in return for a contractual agreement from the city that the utility will be the "sole distributor" of power or fuel, the franchise agreement acts as a device or subterfuge to do indirectly what is forbidden to be done directly, that is, a granting of an exclusive franchise by a municipality which is prohibited by the Constitution, Statutes, and Court decisions of the State of Oklahoma. It is the opinion of the Attorney General that your question is answered in the affirmative. There exists both constitutional and statutory provisions bearing upon the question of whether a public utility power company may rightfully withdraw its voluntary one percent franchise tax payment and discount granted by it to cities on the cost of electrical services to the city itself. If the utility company operates on a system-wide rate structure, any payment or discount made by it to any city or cities which is not equal, or nearly equal, to the other cities served by it would amount to the practice of undue or unjust discrimination against the rate payers residing in the city or cities receiving payment or discount in lesser amounts, because such rate payers would be paying for benefits not received by them. To avoid such unjust discrimination, utility companies operating on a system-wide rate structure must uniformly withdraw its additional payments and discounts from all cities being served by it if it wishes to withdraw the same from one city being served by it. The only other permitted solution, if the utility company wishes to withdraw the additional payments and discounts to less than all the cities served by it, would be for the utility to change its operation to a local unit rate structure. If the utility company operates on a local unit rate structure, the additional payments or discounts received by one city, which is higher than payments or discounts received by other cities served by the utility, should be passed on to the consumers residing in the city receiving the higher payments and discounts. The utility company cannot justify the payment of said additional payments and discounts solely upon the basis that they are paid in consideration of being granted the exclusive right by the municipality to distribute power within the limits of the city. To contract for such a purpose would be void as having an illegal purpose as its subject matter because cities are prohibited by Article XVIII, Section 7 of the Oklahoma Constitution from granting exclusive franchises. Also, monopolies are forbidden by Article II, Section 32 of the Oklahoma Constitution. (Odie A. Nance)