# Richmond

CITY OF NORFOLK V. CHESAPEAKE AND POTOMAC TELEPHONE COMPANY OF VIRGINIA.

October 10, 1975.

Record No. 750399.

Present, I'Anson, C.J., Carrico, Harrison, Harman and Compton, JJ.

*Harold P. Juren, Assistant City Attorney (Philip R. Trapani, City Attorney*, on brief), for appellant.

*Alfred Winchell Whittaker (F. Joseph Feely, III; Howard C. Anderson [D.C.]*, on brief), for appellee.

*Richard D. Rogers, Jr.*, and *Lewis S. Minter*, on brief, for State Corporation Commission.

CARRICO, J., delivered the opinion of the court.

In this appeal of right, the City of Norfolk, an intervenor below, seeks reversal of an order of the State Corporation Commission amending the existing tariff of Chesapeake and Potomac Telephone Company of Virginia. The amendment authorizes C & P to surcharge its

Norfolk customers a portion of certain franchise fees it annually pays the City.

The record shows that under a Norfolk City ordinance adopted April 5, 1898, which both parties to this appeal characterize as a "franchise agreement," C & P enjoys the non-exclusive right to use the public ways of the City for the installation and maintenance of facilities to provide "communication by electricity." In return, C & P is required to pay the City 3% of the "gross earnings realized from local telephone exchange service." [1]

In 1955, after a number of municipalities had imposed upon C & P various types of local levies, the company applied to the Commission for a tariff amendment permitting surcharge of the levies to the respective customers in each of the localities involved. In a proceeding to which the City of Norfolk was a party, the Commission approved a tariff amendment which, with certain modifications made by this Court, was worded as follows:

"26. ADJUSTMENTS FOR CERTAIN LOCAL TAXES AND FEES.

"When a political subdivision of the State charges that company a license tax or franchise fee at a flat rate or based on receipts or based on poles, wires or conduits, so much of the aggregate amount of such taxes and fees as exceeds one-half of one per cent of the aggregate bills of such customers for exchange service will be billed pro rata to the exchange customers receiving service within the political subdivision.

"*Excluded from the foregoing adjustment are all franchise fees fixed by contract between the company and the locality before 1956.*" (Emphasis added.)

See *Re Chesapeake and Potomac Telephone Co.*, 1955 Annual Report S.C.C. 189 (order), 1956 Annual Report S.C.C. 23 (opinion), *modified and aff'd. sub nom. Newport News* v. *Chesapeake and Potomac Telephone Co.*, 198 Va. 645, 96 S.E.2d 145 (1957).

---

[1] C & P states in its brief that local exchange revenues do not include revenues received from service provided the City of Norfolk and other governmental agencies. Consequently, C & P further states, the City would not be subject to the surcharge involved in the present case.

At the time the Commission promulgated the 1955 tariff amendment, the italicized exception clause applied to five localities, including the City of Norfolk. At the time of the hearing below in the present case, only Norfolk was entitled to claim the benefit of the exception. The amendment now under review deletes the exception clause from C & P's tariff. If the amendment stands, C & P would be authorized to surcharge its Norfolk customers so much of the amount of the franchise fees it pays the City[2] as exceeds one-half of one per cent of local exchange revenues.

The Commission, in its written opinion, noted that telephone rates currently paid by C & P customers outside Norfolk reflect, in part, the added cost to C & P attributable to the franchise fees paid pursuant to the Norfolk agreement. The Commission explained that it was necessary to delete the exception clause from C & P's tariff so that the fees paid Norfolk would "be treated the same as are all other franchise fees and license taxes imposed by the municipalities of this State upon C & P." A different result, the Commission opined, would afford preferential treatment to Norfolk residents and permit them "to enjoy a revenue source from non-residents far in excess of that allowed any other municipality."

On appeal, citing the prior proceeding with respect to C & P's tariff and the exception clause, Norfolk contends that principles of res judicata and stare decisis prohibit deletion of the clause in the present case. In the earlier proceeding, the Commission found and this Court affirmed, Norfolk says, that the City's franchise arrangement with C & P was a voluntary contractual undertaking, providing for franchise fees "in the nature of payments for easements," and that it would be unreasonable to "upset" the arrangement. Consequently, Norfolk states, the Commission promulgated, and this Court approved, the exception clause. The findings in the prior proceeding, Norfolk concludes, "constituted a judicial determination of the legal character" of the franchise agreement, barring further inquiry into the nature of the agreement and prohibiting allowance of the surcharge in the present case.

█ We first point out that this Court did not, in the earlier proceeding, pass upon the validity of the exception clause. Indeed, the validity of the clause was not an issue before this Court in the prior proceeding. The sole issue presented, and the only one we decided,

---

[2] The record shows that in 1973 C & P paid the City $550,867 in franchise fees.

was whether the Commission had authority to permit C & P to sur-charge local franchise fees to local customers.

■ Aside from that and of more importance, even if we assume the original validity of the exception clause and also agree with Nor-folk that the prior decision bars further inquiry into the character of its franchise arrangement with C & P, it does not follow that the de-cision prohibits present deletion of the clause. In deleting the clause, the Commission was involved in rate-making, a purely legislative func-tion. We touched upon this very point in our opinion in the prior proceeding, where we stated:

> "In matters pertaining to the establishment of rates and charges of transmission and transportation companies, the Commission ex-ercises a purely legislative function, and so far as such matters are concerned it is the legislative branch of the government . . . . *Its power* in this connection is not limited merely to the change of a particular rate, but *includes 'the power to change, under certain conditions, any part of a filed schedule, rate, rule or regulation that in any manner affects the rates charged or to be charged.' "* 198 Va. at 648, 96 S.E.2d at 148. (Emphasis added.)

In promulgating the exception clause in the first instance, the Com-mission established part of a schedule or tariff which affected C & P's rates not only in the five localities, including Norfolk, originally fall-ing within the exception, but state-wide as well. Because the Com-mission acted in its legislative capacity, inclusion of the exception clause as part of C & P's tariff was not irrevocable, either under the doctrine of res judicata or, even if this Court had approved the clause, under principles of stare decisis. *See Atlantic Coast Line Railroad Co. v. Commonwealth,* 191 Va. 241, 254-55, 61 S.E.2d 5, 11 (1950); *Chesapeake and Potomac Telephone Co.* v. *Commonwealth,* 147 Va. 43, 88, 136 S.E. 575, 588 (1927).

In deleting the exception clause in the present proceeding, the Com-mission merely changed part of C & P's tariff in a manner to equalize telephone rates between Norfolk and the rest of the state. Because this, too, was legislative action, our only concern is whether the action was reasonable. *See Blackwood Coal and Coke Co.* v. *Old Dominion Power Co.,* 151 Va. 52, 63-64, 144 S.E. 439, 443 (1928).

The City contends that the Commission's action was unreasonable because deletion of the exception clause improperly changed the char-acter of its franchise arrangement with C & P. The deletion, however,

did not change the character or alter any of the obligations of the franchise arrangement. The sole subject matter of the agreement was the right to use of Norfolk's public ways, the exercise of which imposed upon C & P the obligation to pay the franchise fees. Deletion of the exception clause in no way affects the obligation of C & P to continue the franchise payments so long as it uses the public ways of the City for telephone purposes.

In deleting the exception clause, the Commission removed an instance of rate discrimination and preference resulting when Norfolk became the only locality entitled to claim the benefit of the exception. It is the duty of the Commission to adjust rates which it finds discriminatory or preferential. Code § 56-235. When the Commission acts to correct discriminatory or preferential rates, its action cannot be termed unreasonable.

The final order of the Commission will be affirmed.

*Affirmed.*