F. Mabel BAKER; Howard C. Porter, Jr., Plaintiffs–Appellants,

v.

MAYOR AND CITY COUNCIL OF BALTIMORE, Defendant–Appellee,

Equal Employment Opportunity Commission, Amicus Curiae.

No. 88–1384.

United States Court of Appeals, Fourth Circuit.

Argued July 25, 1989.

Decided Feb. 1, 1990.

Rehearing and Rehearing In Banc Denied Feb. 23, 1990.

---

**5.** MCHR participated as amicus curiae in this appeal.

**680**

Charles Lee Nutt (Clements & Nutt, Kenneth W. Koppenhoefer, Jr., Koppenhoefer & Schmitz, on brief), for plaintiffs-appellants.

Carolyn L. Wheeler (Charles A. Shanor, Gen. Counsel, Gwendolyn Young Reams, Associate Gen. Counsel, Lorraine C. Davis, Asst. Gen. Counsel, E.E.O.C., on brief) for amicus curiae in support of plaintiffs-appellants.

Joanne Evans–Anderson, Asst. Sol. (Otho M. Thompson, Associate City Sol., Dept. of Law, on brief) for defendant-appellee.

Before RUSSELL, WIDENER and HALL, Circuit Judges.

K.K. HALL, Circuit Judge:

F. Mabel Baker and Howard C. Porter, Jr., plaintiffs below, appeal from the district court's order dismissing their age discrimination claims and granting summary judgment in favor of the Mayor and the City Council of Baltimore.[1] Baker and Porter filed actions, later consolidated, under the Age Discrimination in Employment Act, 29 U.S.C. §§ 621 *et seq.* ["ADEA"], alleging that the elimination of their positions with the City of Baltimore violated the ADEA. The district court held that the doctrine of legislative immunity insulated the City from liability. Finding that legislative immunity is a complete defense to the ADEA claims, we affirm.

I.

In October 1983, the Mayor of Baltimore directed all department and bureau heads to recommend budget cuts in their respective agencies sufficient to realize a 5% budget reduction for the upcoming fiscal year. The Real Estate Department, a division of the Department of the Comptroller, was headed by John Hentschel who in turn was directly supervised by the Comptroller. In his report to the Comptroller, Hentschel recommended that the positions of Baker and Porter be eliminated. In support of his recommendation, he stated that he believed Baker's duties could be spread out among the other employees in the department and that Porter's duties could be split between another city department and Hentschel himself. Additionally, he recommended the creation of a new position of Administrative Analyst. At the time this report was submitted, Baker was 60 years old and a 24–year City employee; Porter was 64 and a 23–year employee. The Comptroller approved Hentschel's recommendations that the two positions be eliminated and that a new one be created. He then submitted his recommendation to the Finance Director, the next rung in the ladder of authority.

In accordance with the City charter, the Finance Director prepared a preliminary operating budget after receiving recommendations from each agency head. He decided to recommend funding the new Ad-

---

1. Although nominally a suit against the Mayor and City Council, the City itself is actually the defendant. *United States v. City of Yonkers*, 856 F.2d 444, 458 (2d Cir.1988), *cert. denied,* — U.S. ——, 109 S.Ct. 1339, 103 L.Ed.2d 810 (1989).

ministrative Analyst position and eliminating Porter's position; however, he did not recommend the elimination of Baker's position. This preliminary budget was submitted to the Board of Estimates and the Board prepared its proposed Budget Ordinance for submission to the City Council. The Board decided to eliminate both Baker's and Porter's positions and to fund the new one recommended by Hentschel. A "Program Detail for Salaries," detailing the positions for which funding was sought, was attached to the Budget Ordinance presented to the City Council. The Ordinance was adopted by the City Council without modification and approved by the Mayor. Approximately 300 positions were eliminated from the City budget by this ordinance.

In March 1987, Baker and Porter each filed nearly identical lawsuits claiming age discrimination under ADEA and wrongful discharge under state law. The suits were consolidated and the state law claims dismissed. By letter to counsel, the district judge raised the issue of legislative immunity and asked the parties to brief the issue as a supplement to the City's then-pending motion for summary judgment. By order filed November 4, 1988, the City's motion for summary judgment was granted on the ground that legislative immunity was a complete defense. Baker and Porter appeal from this ruling.

## II.

■ Baker and Porter contend that the elimination of their positions was an administrative decision which was merely ratified by the City Council when it adopted the budget bill. Therefore, they argue, legislative immunity should not be permitted to shield the City from liability for what they claim were illegal employment actions. Our analysis of the City's budget-making process convinces us that the purposes behind the immunity doctrine, as set forth in a recent opinion of this Court, mandated dismissal of the plaintiffs' action.

Our first task is to determine which city official's discriminatory intent should be looked to in assessing liability under the ADEA. Baker and Porter argue that the City's liability arises from the discriminatory "employment decisions" of Hentschel and the Comptroller in recommending the job eliminations. Hentschel's position on the lowest rung of the budget-making ladder militates strongly against allowing his actions, regardless of discriminatory intent, to result in liability against the City. His recommendations were just that; they certainly did not bind the Comptroller, the Finance Director, Board of Estimates, the City Council or the Mayor. Similarly, the Comptroller's recommendations were not binding on the higher authorities. To permit the advice or recommendations of low-level personnel to constitute the basis for ADEA liability would impose unwarranted and intolerable burdens on employers, and we decline to do so.

The role of the Board of Estimates is critical in Baltimore's budget-making process. The Board is vested with broad discretionary powers in formulating, determining and executing the City's fiscal policy. The City Council, on the other hand, is limited to merely reducing or eliminating any proposed expenditures, but it may not insert any new amounts. The Board's determination to exclude an appropriation for a given purpose, *e.g.* an agency position, is final. *City of Baltimore v. AFSCME*, 281 Md. 463, 379 A.2d 1031 (1977). The City admits that the Board of Estimates is the "real authority and power" in the budget process, and it is upon that body that we focus our inquiry into the applicability of the legislative immunity doctrine.

## III.

It is beyond dispute that municipal legislators enjoy the protection of immunity when acting in the sphere of legitimate legislative activity. *Bruce v. Riddle*, 631 F.2d 272, 279 (4th Cir.1980). Baker and Porter's lawsuit, however, does not seek damages from the Mayor and individual council members,[2] so this primary purpose of the immunity doctrine is not implicated.

**2.** See footnote 1.

However, this Court has recently held that the doctrine also acts to immunize legislators from having to "testify regarding conduct in their legislative capacity." *Schlitz v. Commonwealth of Virginia*, 854 F.2d 43, 45 (4th Cir.1988). Thus, if the City's defense of the ADEA action would require that City legislators testify about their legislative conduct, then *Schlitz* would mandate affirmance of the lower court. The issue devolves to whether or not the Board's role in the overall budget process ·is properly characterized as "legislative" and, if so, whether the City's defense of the action would necessarily involve testimony by members of the Board regarding their motivation behind the elimination of Baker's and Porter's positions.

 The Board of Estimates is composed of the Mayor, Comptroller, President of the City Council, City Solicitor, and Director of Public Works. The function performed by the Board, and not the titles of its members, is determinative of whether a given task is legislative or executive in nature for immunity purposes. *Forrester v. White*, 484 U.S. 219, 108 S.Ct. 538, 98 L.Ed.2d 555 (1988). The Board's role in the overall budget process persuades us that it is most properly characterized as legislative.

As discussed in Part I, the Director of Finance prepares a "preliminary operating budget" which includes the estimates from the various agencies and his recommendations on the basis of such estimates. He then submits this preliminary budget to the Board of Estimates. After considering the various agency requests for appropriations, the Board submits its proposed budget ordinance to the City Council, including a list of the positions to be funded for the upcoming fiscal year. The Council's role is limited to reducing or eliminating proposed expenditures and to approving or disapproving the Ordinance. While the Board clearly does not possess the ultimate budgetary authority, it is the highest level at which a position may be incorporated into the budget. The act of eliminating a position altogether instead of merely terminating the employment of a public employee is a uniquely legislative function. *Rateree v.*

*Rockett*, 852 F.2d 946, 950 (7th Cir.1988). We conclude, then, that the Board's role in preparing the budget ordinance is a legislative one.

In *Schlitz*, a former state judge sued the state, claiming that the state legislature's failure to reelect him to his judicial position after he had reached the age of seventy violated the ADEA. In holding that the action was barred by the doctrine of legislative immunity, this Court found that the state's defense of the action would necessarily require that individual legislators testify about their reasons for voting as they did. *Id.* at 46. The fact that the legislators were not named as defendants did not render the immunity doctrine inapplicable. As this court stated, "[t]he purpose of the doctrine is to prevent legislators from having to testify regarding matters of legislative conduct, whether or not they are testifying to defend themselves." *Id.* Having determined that the Board of Estimates' role in the budget process is legislative rather than executive or administrative, the question becomes whether the City's defense of the ADEA action would require delving into the motives of the individual Board members regarding the decision to eliminate the positions in the proposed Budget Ordinance.

To prevail on their ADEA claims, Baker and Porter would have to show that age was a determining factor in their termination. *Lovelace v. Sherwin–Williams Co.*, 681 F.2d 230, 238 (4th Cir.1982). Should the plaintiffs make a prima facie case that age was a determining factor in the Board of Estimates' decision, we are unable to conceive of a viable defense which would not include testimony from the Board's members to the effect that they were not motivated by the plaintiffs' ages. *Schlitz* held that this eventuality triggers the immunity protection, and it is on the basis of this controlling precedent that our decision rests.

AFFIRMED.