PRESENT: All the Justices

BOARD OF SUPERVISORS OF FLUVANNA COUNTY

                                             OPINION BY
v.  Record No. 121191          JUSTICE LEROY F. MILLETTE, JR.
                                           APRIL 18, 2013
DAVENPORT & COMPANY LLC


             FROM THE CIRCUIT COURT OF FLUVANNA COUNTY
               Benjamin N. A. Kendrick, Judge Designate

     In this appeal, we consider whether the circuit court

erred when it sustained a demurrer to a complaint filed by the

Board of Supervisors of Fluvanna County (the Board) against a

private financial advisor on the basis that the separation of

powers doctrine prevented the court from resolving the

controversy because the court would have to inquire into the

motives of the Board's legislative decision making.  An inquiry

into the relationship between the separation of powers doctrine

and the motivation of legislators necessarily implicates

legislative immunity.  For the reasons set forth below, we hold

that the Board effectively waived its common law legislative

immunity from civil liability and the burden of litigation, and

therefore reverse the circuit court judgment sustaining the

demurrer filed by Davenport & Company LLC (Davenport).

                        I.   Background

     The Board filed a complaint against Davenport in the

Circuit Court of Fluvanna County.  The complaint included

allegations of breach of fiduciary duty (Count I), actual fraud

(Count II), gross negligence (Count III), constructive fraud (Count IV), unjust enrichment or disgorgement (Count V), breach of contract (Count VI), and breach of the Virginia Securities Act (Count VII).

In its complaint, the Board claimed that Davenport has continuously served as the financial advisor to the Board for more than fifteen years, during which David P. Rose (Rose), Davenport's Senior Vice President and Manager of Davenport Public Finance, served as the Board's principal contact person. The Board asserted that Davenport, as financial advisor, made knowingly false representations and used its fiduciary position to persuade the Board to hire Davenport as an advisor regarding the financing of the construction of a new high school (the Project).

The Board claimed that Davenport made a presentation to the Board in August 2008 in which it represented the estimated borrowing cost for stand alone bonds to be 4.87 percent, with the estimated borrowing cost for the pool of bonds offered by the Virginia Public School Authority (pool bonds) at 4.81 percent. The Board also alleged that Rose specifically represented that Fluvanna County could not refinance the bonds if it participated in the pool bonds, which representation was made knowingly and was materially false. The Board asserted

2

that it reasonably relied upon these representations when it voted in favor of issuing stand alone bonds.

When the school bonds were issued in December 2008, the stand alone bonds had reached an interest rate of 5.95 percent. The pool bonds, issued three weeks earlier, however, carried an interest rate of 4.75 percent. The Board alleged that Davenport also breached its fiduciary duty when it failed to disclose the significant difference between the interest rates of the stand alone and pool bonds in August 2008 and the bonds' interest rates in December 2008, when the bonds were ultimately issued. The Board claimed that the County incurred nearly $18 million in excess interest payments on the stand alone bonds as a result of Davenport's malfeasance. It requested consequential damages in the amount of $18.5 million, $350,000 in punitive damages, attorneys' fees and costs, and disgorgement of all fees paid to Davenport.

Davenport filed its amended demurrer, plea in bar, answer, and affirmative defenses with the circuit court. In its amended demurrer, Davenport argued that the court should dismiss the complaint, with the exception of the claim for unjust enrichment (Count V), as it violated the separation of powers doctrine because the elements of the claims and Davenport's defenses required the court to adjudicate issues not properly before the judiciary. The circuit court,

3

following a hearing on the amended demurrer, agreed with Davenport and held that the separation of powers doctrine prohibited the court from resolving the dispute because to do so would require inquiry into the motives of the Board. The court sustained the demurrer with prejudice and refused to allow the Board the opportunity to amend the pleadings. The Board subsequently filed its timely appeal.

## II. Discussion

### A. Standard of Review

The standard of review applicable to the circuit court's sustaining of a demurrer is well established:

> A demurrer tests the legal sufficiency of a [complaint] and admits the truth of all material facts that are properly pleaded. The facts admitted are those expressly alleged, those that are impliedly alleged, and those that may be fairly and justly inferred from the facts alleged. The trial court is not permitted on demurrer to evaluate and decide the merits of the allegations set forth in a [complaint], but only may determine whether the factual allegations of the [complaint] are sufficient to state a cause of action.
>
> A trial court's decision sustaining a demurrer presents a question of law which we review de novo. Furthermore, like the trial court, we are confined to those facts that are expressly alleged, impliedly alleged, and which can be inferred from the facts alleged.

Harris v. Kreutzer, 271 Va. 188, 195-96, 624 S.E.2d 24, 28 (2006) (internal citations and quotation marks omitted).

4

### B. Issue of First Impression

In reviewing these arguments, we acknowledge that the particular issue presented regarding Constitutional and common law legislative immunity is one of first impression. In 1979, the United States District Court for the Eastern District of Virginia recognized the lack of precedent on the issue, stating that "the Virginia Supreme Court has not had occasion to construe the scope of the Virginia speech or debate clause." Greenberg v. Collier, 482 F.Supp. 200, 202 (E.D. Va. 1979). In the absence of any Virginia precedent on the issue, the court turned to the "considerable authority applying and interpreting the speech or debate clause of the United States Constitution" in other jurisdictions. Id. It did so because "state and federal immunities are very similar in their wording[, and] they appear to be based upon the same historical and public policy considerations." Id. Today, the Court has occasion to evaluate the scope of the Constitutional legislative immunity and its counterpart in common law. We, as the court in Greenberg, will do so in reliance on state and federal case law.

### C. Separation of Powers

The Board first assigns error to the circuit court's dismissal of the complaint based on the separation of powers doctrine. It argues that the controversy at bar is not one

5

that would require the circuit court to interfere with other branches of government. The Board claims that the court would not be evaluating legislative motivation for the purpose of overturning or invalidating legislation, but would instead be receiving evidence of the motivations solely to assist in establishing the elements of professional duty, reliance, and damages caused by Davenport's breach. The Board asks the Court to reverse the ruling of the circuit court and allow the case to proceed.

Davenport disagrees, pointing out that elements of the Board's claims, such as reliance and damages, would require an evaluation of the motivation behind legislative action. Davenport argues that the circuit court correctly dismissed the case in its entirety because to prove or defend elements of the claims involved requires an evaluation of the Board members' motivations in voting for the issuance of stand alone bonds. Davenport contends that such inquiry would violate the separation of powers doctrine.

*1. Constitutional Legislative Immunity*

Article III, Section 1 of the Constitution of Virginia mandates that "legislative, executive, and judicial departments shall be separate and distinct, so that none exercise the powers properly belonging to the others." The principles of separation of powers generally "preclude[] judicial inquiry

6

into the motives of legislative bodies elected by the people."
_Ames v. Painter_, 239 Va. 343, 349, 389 S.E.2d 702, 705 (1990);
see also _Bogan v. Scott-Harris_, 523 U.S. 44, 55 (1998). Chief
Justice Marshall recognized the danger of such an inquiry more
than a hundred years ago when he wrote:

> It may well be doubted how far the validity
> of a law depends upon the motives of its
> framers, and how far the particular
> inducements, operating on members of the
> supreme sovereign power of a state, to the
> formation of a contract by that power, are
> examinable in a court of justice. If the
> principle be conceded, that an act of the
> supreme sovereign power might be declared
> null by a court, in consequence of the means
> which procured it, still would there be much
> difficulty in saying to what extent those
> means must be applied to produce this
> effect.

_Fletcher v. Peck_, 10 U.S. 87, 130 (1810).

Chief Justice Marshall's concerns are recognized in
Article IV, Section 9 of the Constitution of Virginia, which
grants "[m]embers of the General Assembly . . . , in all cases
except treason, felony, or breach of the peace . . .
privilege[] from arrest during the sessions of their respective
houses; and for any speech or debate in either house [such
members] shall not be questioned in any other place." This
provision, which is derived from the Speech or Debate Clause of
the United States Constitution, affords General Assembly
members with immunity that protects them from being called into

7

an outside forum to defend their legislative actions.  See U.S. Const., art. I, § 6.

By its terms, the Speech or Debate Clause of the United States Constitution, although similar in content to Article IV, Section 9 of the Constitution of Virginia, does not apply to the states.  Lake Country Estates, Inc. v. Tahoe Reg'l Planning Agency, 440 U.S. 391, 404 (1979).  The immunity provided under the terms of Article IV, Section 9 of the Constitution of Virginia is also restricted in application, providing immunity only to the General Assembly.  See Doe v. Pittsylvania County, 842 F.Supp.2d 906, 916 (W.D. Va. 2012).  As a result, members of a board of supervisors, legislators of a municipality, are outside the scope of both federal and state Constitutional legislative immunity provisions.

*2.   Common Law Legislative Immunity*

Despite the inapplicability of Constitutional legislative immunity to the case at bar, state and local legislators have nevertheless been found to be protected because "common law legislative immunity . . . protect[s] the integrity of the legislative process by [e]nsuring the independence of individual legislators."  Miles-Un-Ltd. v. Town of New Shoreham, 917 F.Supp. 91, 98 (D.N.H. 1996) (quoting United States v. Brewster, 408 U.S. 501, 507 (1972)); see also Steiner v. Superior Court, 58 Cal.Rptr.2d 668, 677 (Cal. Ct. App. 1996)

8

(stating that "[t]hese corollaries of the separation of powers doctrine regarding legislative acts apply to local government bodies, including boards of supervisors, when they act in a legislative capacity"); Montgomery Cnty. v. Schooley, 627 A.2d 69, 73 (Md. Ct. Spec. App. 1993) (applying to members of local legislative bodies as a matter of "common law doctrine of official immunity").  The United States Supreme Court has held that local legislators are protected under common law legislative immunity to the same extent as legislators protected under Constitutional legislative immunity provisions because "[t]he rationales for according absolute legislative immunity to federal, state, and regional legislators apply [to local legislators] with equal force."  Bogan, 523 U.S. at 52.

The immunity provided by common law is "similar in origin and rationale to that accorded Congressmen under the Speech or Debate Clause," and was adopted to safeguard the performance of legislative duties from "fear of outside interference." Supreme Court of Va. v. Consumers Union of the U.S., Inc., 446 U.S. 719, 731-32 (1980).  Thus, it "is much more than protection against liability."  Lewis v. Legislature of the Virgin Islands, 44 V.I. 162, 166 (V.I. Terr. Ct. 2002). It "prevent[s] legislators from having to testify regarding matters of legislative conduct, whether or not they are testifying to defend themselves," Schlitz v. Virginia, 854 F.2d

43, 46 (4th Cir. 1988), and "frees legislators from the costs of litigation." Lewis, 44 V.I. at 166.

Common law legislative immunity applies to municipal legislators when they are "acting [with]in the sphere of legitimate legislative activity." Baker v. Mayor of Baltimore, 894 F.2d 679, 681 (4th Cir. 1990). Legislative actions include, but are not limited to, "delivering an opinion, uttering a speech, or haranguing in debate; proposing legislation; voting on legislation; making, publishing, presenting, and using legislative reports; authorizing investigations and issuing subpoenas; and holding hearings and introducing material at Committee hearings." Fields v. Office of Johnson, 459 F.3d 1, 10-11 (D.C. Cir. 2006) (internal quotation marks and footnotes omitted).

In the present case, it is clear that the motivations of and discussions between Board members surrounding their vote on the stand alone bonds fall within the scope of legislative immunity. In a trial between the Board and Davenport, the fraud claims, Counts II and IV, would require proof of the element of reasonable reliance for the Board to establish the claims. The claims of breach of fiduciary duty (Count I), gross negligence (Count III), unjust enrichment (Count V), breach of contract (Count VI), and breach of the Virginia Securities Act (Count VII) would require the Board to prove

10

that it reasonably relied upon Davenport and that this reasonable reliance resulted in provable damages.  An evaluation of whether the Board members relied upon Davenport's allegedly misleading statements in their discussions concerning the bonds requires testimonial probing into the basis for the Board's vote on the bond issue.  As a result, the circuit court correctly held that the separation of powers doctrine was implicated.

*3.    Waiver of Board's Legislative Immunity*

The circuit court erred, however, in dismissing the claim because the Board effectively waived the protection of legislative immunity.  Legislative immunity can be waived only by an "explicit and unequivocal renunciation of the protection."  United States v. Helstoski, 442 U.S. 477, 491 (1979).  The Board fulfilled this requirement by: (1) declining to assert legislative immunity, (2) voluntarily filing a complaint that, due to the Board's burden of proof, involves issues protected by legislative immunity, and (3) making an unequivocal waiver of protection from inquiry into legislative motivation in the text of its complaint.

The first action evidencing the Board's voluntary waiver is its failure to assert the protection of legislative immunity.  When legislators are protected under the scope of legislative immunity, the legislators must "at a proper time,

and in a proper manner, claim the benefit of [the] privilege." Geyer's Lessee v. Irwin, 4 U.S. 107, 107-08 (1790). In Geyer's Lessee, the defendant's attorney failed to raise the defendant's privilege when he was tending to public business as a member of the state legislature. Id. at 107. In the case at bar, the Board has not asserted legislative immunity at any time during the proceedings and, in fact, is asking for leave to pursue its claim.

The action of the Board in filing its complaint, which initiated litigation on matters surrounding its legislative actions, also supports a waiver of legislative immunity. Legislative immunity will not "protect [legislators] when they step outside the function for which their immunity was designed." May v. Cooperman, 578 F.Supp. 1308, 1317 (D.N.J. 1984). In May, New Jersey legislators interjected themselves into a lawsuit as defendants when they were not originally named as such. Id. By choosing to participate in the proceeding, the legislators waived the protection of legislative immunity. Id. Similarly, the Board filed suit against Davenport and voluntarily undertook a course of action that will require the Board to address issues concerning motivation of the legislators that are ordinarily immune from legislative functions. Thus, the Board, like the legislators in May, effectively waived its immunity.

12

Finally, the Board waived legislative immunity by its unequivocal rejection of the protections of the privilege. In Kingman Park Civic Ass'n v. Williams, 348 F.3d 1033, 1039 (D.C. Cir. 2003), the defendant mayor, a city official, effectively waived legislative immunity when his counsel "disavowed any claim to legislative immunity" before the district court. Likewise, the Board in the present case waived its immunity when it supported its complaint with statements of reliance on Davenport's alleged misrepresentations in the Board's vote for the stand alone bonds, which will necessarily require inquiry into its motivations in passing the legislation:

> The Board reasonably relied on Davenport's written and verbal representations in selecting Davenport. It later learned that many of these representations were knowingly false and were made solely for the purpose of securing Fluvanna County's business and enriching Davenport and Rose.
>
> . . . .
>
> At Rose's urging, the Board issued stand alone bonds to finance the Project . . . rather than participating in the pool of bonds . . . offered by the Virginia Public School Authority.
>
> . . . .
>
> Rose intended that the Board rely on all of his statements and the Board reasonably did so.
>
> . . . .

> Fluvanna County has been financially damaged by Davenport's actions and inactions.
>
> . . . .
>
> Davenport has breached the . . . contract and proximately caused Fluvanna County's damages.

Through the language of its complaint, which will necessarily require inquiry into its motivations, the Board has rejected the protection that legislative immunity provides from inquiry into legislative motivation.

Thus, by failing to assert legislative immunity, by filing its complaint, and by including statements in support of the complaint that of necessity waive protection from inquiry, the Board has waived legislative immunity and the burden of litigation. Because the Board has explicitly and unequivocally waived its privilege of legislative immunity, the circuit court erred in sustaining Davenport's demurrer and dismissing the Board's complaint.

### D.   Other Issues

In light of this conclusion and the circuit court's final order, we will not reach assignments of error two, three, and four. Assignment of error three contends that the specific arguments Davenport raised in support of its demurrer are without merit, specifically that: (1) Counts II, III and IV of the Board's complaint were barred by the economic loss rule,

14

and (2) Count V did not allege a substantive cause of action. Because the circuit court did not base its ruling on these portions of Davenport's demurrer, any "opinion we might express at this time would be premature and merely advisory." Mosher Steel-Virginia, Inc. v. Teig, 229 Va. 95, 105, 327 S.E.2d 87, 94 (1985). We need not reach the merits of assignment of error two, arguing that the trial court improperly considered documents outside the complaint on demurrer, or four, contending that the trial court erred by denying the Board leave to amend the complaint, because our conclusion regarding assignment of error one is dispositive.

### III. Conclusion

For the foregoing reasons, we will reverse the decision of the circuit court and remand the case for further proceedings.

Reversed and remanded.


JUSTICE McCLANAHAN, concurring.

While I agree that the circuit court erred in sustaining Davenport's demurrer, I would hold that the separation of powers doctrine is not implicated by the claims made in this action.

In my view, the majority opinion conflates the concepts of legislative immunity and separation of powers by invoking

15

legislative immunity to conclude the complaint implicates the separation of powers doctrine and holding that waiver of legislative immunity would alleviate any separation of powers issues. The Constitution of Virginia explicitly sets forth the structure of the branches of the Commonwealth and the exclusive powers of each branch while also granting protections to legislators who seek to prevent interference with their duties. The Board has not invoked legislative immunity on behalf of its members. Rather, the question presented in this case, and unanswered by the majority, is whether, by adjudicating the case before it, the circuit court would impermissibly be exercising legislative power in direct violation of this constitutional structure. Because the circuit court would not be exercising legislative power to adjudicate the case before it, I would answer this question in the negative.

## I. DISTINCTION BETWEEN SEPARATION OF POWERS AND LEGISLATIVE IMMUNITY

Although legislative immunity may act as a corollary to the separation of powers doctrine, legislative immunity lies outside the patent statement of the separation of powers found in the Constitution, and each concept protects a different entity and its interests. Article I, Section 5 of the Constitution of Virginia states that "the legislative, executive, and judicial departments of the Commonwealth should

16

be separate and distinct."  Our Constitution iterates this idea in Article III, stating that "[t]he legislative, executive, and judicial departments shall be separate and distinct, so that none exercise the powers properly belonging to the others, nor any person exercise the power of more than one of them at the same time."

Furthermore, the Constitution establishes that our form of government and its strictures arise from the people and act for the benefit of the people.  Article I, Section 2 states that "all power is vested in, and consequently derived from, the people, that magistrates are their trustees and servants, and at all times amenable to them."  See also Carter v. Commonwealth, 96 Va. 791, 812, 32 S.E. 780, 784 (1899) ("In our system of government all power and authority are derived from the people.  They have seen fit by organic law to distribute the powers of government among three great co-ordinate departments - the executive, the legislative, and the judicial.").  Additionally, Article I, Section 3 states that the government is formed by the people and "[t]hat government is, or ought to be, instituted for the common benefit, protection, and security of the people, nation, or community," and that the right to "reform, alter, or abolish" the current system of government, including the separation of powers, resides with the people.  As James Madison recognized, the

17

separation of powers protects against "[t]he accumulation of all powers, [l]egislative, [e]xecutive, and [j]udiciary, in the same hands, whether of one, a few, or many, and whether hereditary, self-appointed, or elective, [that] may justly be pronounced the very definition of tyranny."  The Federalist No. 47, at 266 (James Madison) (E.H. Scott ed. 1898).  All of these passages emphasize the fact that the separation of powers inherent in our form of government exists not "to protect the other branches, but rather to protect the populace."  Martin H. Redish & Elizabeth J. Cisar, "If Angels Were to Govern": The Need for Pragmatic Formalism in Separation of Powers Theory, 41 Duke L.J. 449, 486-87 (1991).

A corollary to the separation of powers doctrine is the concept of legislative immunity.  As the majority notes, this concept is enshrined in Article IV, Section 9 of the Constitution of Virginia.  However, rather than establishing the form and structure of our government, this section ensures that "legislators are not distracted from or hindered in the performance of their legislative tasks by being called into court to defend their actions."  Powell v. McCormack, 395 U.S. 486, 505 (1969).  The protection of legislative immunity lies with the individual legislators "to insure that the legislative function may be performed independently without fear of outside interference."  Supreme Court of Va. v. Consumers Union of the

18

U.S., Inc., 446 U.S. 719, 731 (1980) (citing Eastland v. United States Servicemen's Fund, 421 U.S. 491, 502-03 (1975)).  It is a right held by each legislator in order that he or she may independently and without interference conduct his or her legislative duty.[1]

Thus the separation of powers doctrine and legislative immunity are distinct concepts lying with separate entities: the first establishing our form of government and ensuring the protection of the people against aggrandizement leading to tyranny, and the second ensuring the independence of a legislator.  One belongs to and is for the benefit of the people while the other belongs to and is for the benefit of the individual legislator.  For these reasons, while an individual legislator may be able to waive his protective rights, no individual or even entire branch of government has the power to waive a protection for the benefit of the people.

In this case, Davenport argues that the separation of powers doctrine "makes this case non-justiciable."  According to Davenport, "[t]his is a lawsuit for wrongful legislation"

---

[1] I agree that legislative immunity can be waived in the manner described in the majority opinion; however, any waiver must be made on an individual basis in the circuit court and not based solely on the Board's complaint and lack of asserting legislative immunity.  Since I believe the issue before us is whether separation of powers precludes adjudication of the Board's complaint, and I further believe that legislative immunity has not been invoked in this case, I do not address whether any members of the Board have waived its protection.

and the Board is asking the court "to fix that legislation" in violation of the doctrine of separation of powers. Davenport has not attempted to invoke the principle of legislative immunity on behalf of the members of the Board or suggested that it may invoke such immunity for its own benefit to preclude the Board's claims.[2]

## II.  EXERCISE OF JUDICIAL POWER

Therefore, the issue before us is whether the circuit court was correct in holding that because "judges cannot inquire into the motive of legislators and why they did what they did," the case before it is not justiciable under the separation of powers doctrine. As noted above, the Constitution of Virginia forbids one branch, in this case the judicial, from exercising the powers of another branch, in this case the legislative. As such, the judicial branch would only

---

[2] To be sure, Davenport has cited to the principle of legislative immunity as one example of the "practical problems" the circuit court may encounter if this case is determined to be justiciable and a current or former member of the Board "attempts to invoke immunity." Indeed, such "practical problems" may occur in the circuit court if a member of the Board chooses to invoke immunity. However, the potential hurdles the Board may or may not face in trying to prove its claims does not affect the determination of whether the Board has stated a justiciable claim. Kurpiel v. Hicks, 284 Va. 347, 353, 731 S.E.2d 921, 925 (2012) (a demurrer tests the legal sufficiency of the facts alleged not the strength of proof). Nevertheless, even if Davenport was relying upon legislative immunity to support its demurrer, such argument would necessarily fail since only an individual protected by immunity may invoke its protections.

violate the separation of powers doctrine if it were to exercise the legislative power held by the General Assembly. Va. Const. art. IV, § 1. But in the case before us, the circuit court was presented with a question well within the powers vested in the judiciary. Va. Const. art. VI, § 1 ("The judicial power of the Commonwealth shall be vested in a Supreme Court and in such other courts of original or appellate jurisdiction subordinate to the Supreme Court as the General Assembly may from time to time establish.").

Taking, as we must for the purposes of a demurrer, the allegations of the complaint as true, Harris v. Kreutzer, 271 Va. 188, 195-96, 624 S.E.2d 24, 28 (2006), Davenport committed fraud and gross negligence, breached its contracts, fiduciary duty, the Virginia Securities Act, and was unjustly enriched. The Board is seeking monetary and punitive damages. If the circuit court were to find for the Board on all counts and award the full damages sought by the Board, no legislative act would occur. It would be exercising "the essential function of the judiciary -- the act of rendering judgment in matters properly before it" and not "the function of statutory enactment, a power unique to the legislative function." Moreau v. Fuller, 276 Va. 127, 136, 661 S.E.2d 841, 846 (2008).

Although the Board's claims involve the enactment of a bond resolution as a factual matter, the circuit court has not

been asked by the Board to repeal or alter that resolution; it has only been asked to adjudicate whether Davenport has committed the alleged acts to the detriment of the Board. To support its demurrer, Davenport has characterized the Board's action as an attempt to undo the bond resolution.[3] Once that characterization is rejected, as it must be, it is evident that the separation of powers doctrine is not implicated. In short, because the Board does not seek to invalidate its bond resolution, the circuit court would not be exercising legislative powers in violation of the separation of powers doctrine by adjudicating the claims asserted in the Board's complaint. Therefore, the circuit court erred in sustaining Davenport's demurrer on those grounds.

---

[3] While Davenport principally relies upon the Court's refusal to inquire into the motives of legislative bodies when asked to determine the validity of legislation, no such determination is involved here, notwithstanding Davenport's efforts to characterize the action as an attempt to "retroactively change the 2008 Board's bond Resolution." Cf. Chesapeake & Potomac Tel. Co. v. City of Newport News, 196 Va. 627, 639-40, 85 S.E.2d 345, 352 (1955) ("No principle of our constitution is more firmly established than that this court may not, in passing upon the validity of a statute, inquire into the motives of Congress. Nor may the Court inquire into the wisdom of the legislation. Nor may it pass upon the necessity for the exercise of a power possessed, since the possible abuse of a power is not an argument against its existence.") (emphasis added) (internal quotation marks omitted).