PRESENT:  All the Justices

JUDITH BROOKS-BUCK, ET AL.

                                               OPINION BY
v.  Record No. 250246                   JUSTICE TERESA M. CHAFIN
                                              OCTOBER 16, 2025

DEBORAH WAHLSTROM

FROM THE CIRCUIT COURT OF THE CITY OF SUFFOLK

The appellants, Judith Brooks-Buck and Tyron Riddick, contend that the Circuit Court of the City of Suffolk erred by overruling their demurrers to Deborah Wahlstrom's amended complaint.  Relying on common law and statutory immunity principles, Brooks-Buck and Riddick maintain that the allegations of the complaint establish that they are immune from Wahlstrom's defamation and defamation per se claims.  For the following reasons, we affirm the circuit court's judgment and remand this case for further proceedings.

## I.  BACKGROUND

Wahlstrom, an educator and former school administrator, frequently attended public meetings of the Suffolk City School Board, where she provided comments addressing educational and administrative issues.  In 2021, Wahlstrom was escorted from school property by police officers after she refused to leave a school board meeting.  Wahlstrom subsequently sued the school board and school officials (including Brooks-Buck, a school board member who was serving as the chairperson of the school board at that time), asserting violations of the Virginia Freedom of Information Act ("VFOIA").  Wahlstrom prevailed in the litigation.  *See Suffolk City Sch. Bd. v. Wahlstrom*, 302 Va. 188, 224 (2023).

In 2023, Brooks-Buck filed an internal disciplinary complaint against Dawn Marie Brittingham, a school board member who valued Wahlstrom's input.  Brooks-Buck alleged that Brittingham violated certain norms and protocols of the school board.  Significantly, Brooks-

Buck submitted a written "narrative" addressing Brittingham's alleged misconduct. The narrative contained several statements about Wahlstrom. Among other things, the narrative stated that Wahlstrom committed perjury in the prior VFOIA litigation.[1]

Riddick, the school board member who was then serving as the chairperson of the school board, issued a "notice" addressing Brittingham's alleged disciplinary violations. The notice itself did not directly reference Wahlstrom. Riddick, however, attached Brooks-Buck's narrative to the notice. Riddick circulated the notice and attached narrative to the members of the school board and the superintendent of schools. Wahlstrom initially received a copy of the notice and narrative from an unnamed individual. She later obtained copies of these documents through a VFOIA request.

Wahlstrom filed a civil complaint asserting defamation and defamation per se claims against Brooks-Buck and Riddick. With leave of the circuit court, Wahlstrom filed an amended complaint setting forth additional factual allegations. After detailing the contentious history between the parties, the amended complaint alleged that Brooks-Buck and Riddick made several defamatory statements about Wahlstrom in the notice and narrative that initiated the disciplinary proceedings against Brittingham.

Brooks-Buck and Riddick each filed demurrers to the amended complaint. In pertinent part, the demurrers asserted that the allegations of the amended complaint established that Brooks-Buck and Riddick were immune from Wahlstrom's defamation and defamation per se claims. The demurrers claimed that the allegations of the amended complaint established that

---

[1] Although the narrative contained other statements about Wahlstrom, the circuit court determined that these statements did not support Wahlstrom's defamation and defamation per se claims. This ruling is not at issue in the present appeal.

2

Brooks-Buck and Riddick were entitled to legislative immunity, sovereign immunity, and statutory immunity under Code § 8.01-223.2.

The circuit court overruled the demurrers in part, concluding that the allegations of the amended complaint did not establish that Brooks-Buck and Riddick were immune from Wahlstrom's claims. Acting pursuant to Code § 8.01-670.2,[2] Brooks-Buck and Riddick sought interlocutory review of the circuit court's decision. We granted their petition for review.

## II. ANALYSIS

On appeal, Brooks-Buck and Riddick contend that the allegations of Wahlstrom's amended complaint establish that they are immune from Wahlstrom's defamation and defamation per se claims. We disagree.

### A. THE STANDARD OF REVIEW

We review a circuit court's decision to sustain or overrule a demurrer de novo. *Givago Growth, LLC v. iTech AG, LLC*, 300 Va. 260, 264 (2021). "A demurrer tests the legal sufficiency of the facts alleged in a complaint assuming that all facts alleged therein and all inferences fairly drawn from those facts are true." *Id.* (quoting *Mansfield v. Bernabei*, 284 Va. 116, 120-21 (2012)). When reviewing a circuit court's decision on a demurrer, "we accept as true all factual allegations expressly pleaded in the complaint and interpret those allegations in the light most favorable to the plaintiff," accepting any reasonable inferences that may be fairly drawn from the factual allegations of the complaint. *A.H. v. Church of God in Christ, Inc.*, 297 Va. 604, 613 (2019) (quoting *Coward v. Wellmont Health Sys.*, 295 Va. 351, 358 (2018)); *see*

---

[2] In pertinent part, Code § 8.01-670.2(A) states that "[w]hen, prior to the commencement of trial, the circuit court has entered in any pending civil action an order granting or denying a plea of sovereign, absolute, or qualified immunity that, if granted, would immunize the movant from compulsory participation in the proceeding, the order is eligible for immediate appellate review."

3

*also Assurance Data, Inc. v. Malyevac*, 286 Va. 137, 143 (2013) ("[W]e consider as true all the material facts alleged in the . . . complaint, all facts impliedly alleged, and all reasonable inferences that may be drawn from such facts." (quoting *Concerned Taxpayers v. County of Brunswick*, 249 Va. 320, 323 (1995))).

### B. THE PROCEDURAL PROPRIETY OF THE DEMURRERS

This case comes before us in an unsound procedural posture. In general, an affirmative defense may not be raised in a demurrer. *See Givago Growth, LLC*, 300 Va. at 264. "[A] demurrer . . . tests only the facial validity of the allegations in a complaint rather than the validity of affirmative defenses." *Id.* at 264-65 (quoting *A.H.*, 297 Va. at 638 n.23). An affirmative defense instead should be raised in a plea in bar, which "does not point out the legal insufficiency of allegations [in a complaint] but rather demonstrates their irrelevance because of some other dispositive point." *California Condo Ass'n v. Peterson*, 301 Va. 14, 20 (2022) (quoting *Our Lady of Peace, Inc. v. Morgan*, 297 Va. 832, 847 n.4 (2019)).

In some circumstances, however, a plea in bar is similar to a demurrer. *See id.* "A plea in bar can raise an affirmative defense targeting solely the allegations of the complaint (assumed arguendo to be true), thus obviating any need for an evidentiary hearing." *Id.* at 20-21.

> "[W]here no evidence is taken in support of a plea in bar, the trial court, and the appellate court upon review, consider solely the pleadings in resolving the issue presented. In doing so, the facts stated in the plaintiff's [complaint] are deemed true." This approach results in functionally de novo review of the trial court's judgment.

*Massenburg v. City of Petersburg*, 298 Va. 212, 216 (2019) (quoting *Lostrangio v. Laingford*, 261 Va. 495, 497 (2001)).

Brooks-Buck and Riddick asserted affirmative defenses in their demurrers, including legislative, sovereign, and statutory immunity. We underscore that an affirmative defense should

4

ordinarily be raised in a plea in bar rather than a demurrer. *See California Condo Ass'n*, 301 Va. at 20; *Givago Growth, LLC*, 300 Va. at 264. Given the analytical similarity between a demurrer and a plea in bar relying solely upon the allegations of a complaint, we will address the substance of the arguments presented in this appeal—notwithstanding the procedural posture of the case.

## C. LEGISLATIVE IMMUNITY

Brooks-Buck and Riddick's first appellate argument involves the application of common law legislative immunity. Brooks-Buck and Riddick contend that disciplining a school board member is a legislative act. As the allegedly defamatory statements at issue were made in the documents that initiated internal disciplinary proceedings against Brittingham, Brooks-Buck and Riddick claim that they are immune from Wahlstrom's defamation and defamation per se claims.

Local legislators, such as members of school boards or other governing bodies, are protected by common law legislative immunity when performing legislative functions.[3] *Board of Supervisors v. Davenport & Co. LLC*, 285 Va. 580, 588 (2013). In the context of defamation, common law legislative immunity provides an absolute privilege. *Isle of Wight Cnty. v. Nogiec*, 281 Va. 140, 152 (2011). A legislator who makes a statement that falls within the scope of common law legislative immunity is accorded "complete immunity from liability" for that statement. *Id.*

Common law legislative immunity serves the public interest. *Id.* at 154. It "encourages individuals who participate in [legislative] proceedings to speak freely on issues relating to 'the operation of the government.'" *Id.* (quoting *Krueger v. Lewis*, 834 N.E.2d 457, 464 (Ill. Ct. App.

---

[3] Another form of legislative immunity arises from Article IV, Section 9 of the Constitution of Virginia. By its express terms, this provision applies to "Members of the General Assembly." *See* Va. Const. art. IV, § 9. This opinion does not address the scope of constitutional legislative immunity.

2005)).  Furthermore, it "protect[s] the integrity of the legislative process by [e]nsuring the independence of individual legislators."  *Davenport*, 285 Va. at 588 (quoting *Miles-Un-Ltd. v. Town of New Shoreham*, 917 F. Supp. 91, 98 (D.N.H. 1996)).

Nevertheless, the public interest served by common law legislative immunity "must be balanced against 'the right of an individual to enjoy his reputation free from defamatory attacks.'"  *Isle of Wight Cnty.*, 281 Va. at 154 (quoting *Krueger*, 834 N.E.2d at 464).  Common law legislative immunity only applies to legislators when they are "acting [with]in the sphere of legitimate legislative activity."  *Davenport*, 285 Va. at 589 (quoting *Baker v. Mayor of Baltimore*, 894 F.2d 679, 681 (4th Cir. 1990)).  It "will not 'protect [legislators] when they step outside the function for which their immunity was designed.'"  *Id.* at 590 (quoting *May v. Cooperman*, 578 F. Supp. 1308, 1317 (D.N.J. 1984)).

Common law legislative immunity applies "when the legislative body is acting in its legislative capacity . . . rather than in its supervisory or administrative capacity."  *Isle of Wight Cnty.*, 281 Va. at 154.  "[T]he creation of legislation is the nexus that supports the application of the privilege."  *Id.* at 155.

While common law legislative immunity is centered on the creation of legislation, it applies to a range of legislative activity.  We have explained that "[l]egislative actions include, but are not limited to, 'delivering an opinion, uttering a speech, or haranguing in debate; proposing legislation; voting on legislation; making, publishing, presenting, and using legislative reports; authorizing investigations and issuing subpoenas; and holding hearings and introducing material at [those] hearings.'"  *Davenport*, 285 Va. at 589 (quoting *Fields v. Office of Johnson*, 459 F.3d 1, 10-11 (D.C. Cir. 2006)).

6

The "sphere of legitimate legislative activity" is "not necessarily tied to official legislative proceedings, but to essentials of the legislative process." *Edwards v. Vesilind*, 292 Va. 510, 527-28 (2016). When determining whether an act falls within the scope of common law legislative immunity, a court is required "to assess, on the whole, the function [that the act] serves." *Id.* at 530. Common law legislative immunity applies to "communications or acts" that are "integral to the sphere of legitimate legislative activity." *Id.* at 529.

We have not addressed whether the act of disciplining a local legislator for misconduct constitutes a legislative act that falls within the scope of common law legislative immunity. The United States Court of Appeals for the Fourth Circuit, however, has held that it is a "core" legislative act. *Whitener v. McWatters*, 112 F.3d 740, 741 (4th Cir. 1997). The Fourth Circuit observed that disciplinary proceedings are the primary method "by which legislative bodies preserve their 'institutional integrity,'" *id.* at 744, explaining that disciplinary proceedings "protect the public reputation of legislative bodies and make orderly operation possible," *id.* at 745.

This reasoning is compelling. Although disciplinary proceedings do not directly encompass the creation of legislation, they are integral to the legislative process. As noted by the Fourth Circuit, disciplinary proceedings preserve the institutional integrity of local legislative bodies and help maintain order during local legislative proceedings. *See id.* at 744-45. Accordingly, we hold that a local legislative body engages in a legislative act when it disciplines one of its members.

This conclusion does not end our analysis. We agree that Brooks-Buck and Riddick were engaged in a legislative act when they initiated disciplinary proceedings against Brittingham, another member of the school board. Nonetheless, we conclude that the allegations of

7

Wahlstrom's amended complaint are sufficient to overcome Brooks-Buck's and Riddick's assertions of common law legislative immunity at the demurrer stage of these proceedings. Although Brooks-Buck and Riddick may have been immune from defamation claims based on their statements about Brittingham (at least to the extent that those statements pertained to the pending disciplinary proceedings), it is unclear whether that immunity extends to their statements about Wahlstrom.

Significantly, the narrative authored by Brooks-Buck and attached to the notice issued by Riddick made allegedly defamatory statements about Wahlstrom, a private citizen who was a third party to the disciplinary proceedings. At this point in the litigation, Brooks-Buck and Riddick have not presented any evidence to establish whether their statements about Wahlstrom were integral to the disciplinary proceedings against Brittingham.[4]

Viewing the allegations of the amended complaint in the light most favorable to Wahlstrom, including the allegations detailing the contentious history between the parties, a reasonable jurist could determine that the statements about Wahlstrom in Brooks-Buck's narrative were gratuitous and nonessential to the disciplinary proceedings. Therefore, the circuit court did not err by overruling Brooks-Buck's and Riddick's demurrers to the extent that they asserted common law legislative immunity from Wahlstrom's defamation and defamation per se claims.

---

[4] While school board policy required Riddick (or another school board member) to issue a formal notice to Brittingham concerning her alleged disciplinary violations, the pertinent policy section does not expressly require a detailed narrative describing the misconduct at issue. *See* Suffolk City School Board Policy § 2-2.6:1(C).

D.  SOVEREIGN IMMUNITY

Brooks-Buck and Riddick contend that they made the statements at issue while acting in their official capacities as school board members.  Consequently, Brooks-Buck and Riddick claim that they are entitled to sovereign immunity from Wahlstrom's defamation and defamation per se claims.

"Sovereign immunity is a rule of social policy, which protects the state from burdensome interference with the performance of its governmental functions and preserves its control over state funds, property, and instrumentalities." *Newport News Sch. Bd. v. Z.M.*, 304 Va. ___, ___, 915 S.E.2d 56, 57-58 (2025) (quoting *City of Va. Beach v. Carmichael Dev. Co.*, 259 Va. 493, 499 (2000)).  "The doctrine that the State and its governmental agencies, while acting in their governmental capacities, are immune from liability for tortious personal injury . . . has long been recognized and applied in Virginia." *Kellam v. School Bd.*, 202 Va. 252, 254 (1960).

"School boards are covered by sovereign immunity." *Z.M.*, 304 Va. at ___, 915 S.E.2d at 57.  A school board itself is immune from tort liability, "whether the claims involve simple negligence, gross negligence, or even intentional torts." *Id.* at ___, 915 S.E.2d at 59.  School board members are entitled to the same degree of immunity when they are sued in their official capacities.  *See, e.g.*, *Hinchey v. Ogden*, 226 Va. 234, 238 (1983) ("[A government employee], sued in his official status, enjoys whatever immunity the sovereign may be entitled to claim.").[5]

The same degree of immunity does not extend to school board members who are sued in their individual capacities.  When sued in their individual capacities, school board members are

---

[5] When a school board member is sued in his official capacity, the lawsuit is functionally against the school board itself.  *See, e.g.*, *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) ("Official-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" (quoting *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 690 n.55 (1978))).

9

not immune from gross negligence claims. *See Z.M.*, 304 Va. at ___, 915 S.E.2d at 59. They are also not immune from intentional tort claims. *See Fox v. Deese*, 234 Va. 412, 424 (1987) (explaining that government employees are not immune from intentional tort claims when they are sued in their individual capacities, "irrespective of whether they acted within or without the scope of their employment").

Code § 15.2-1405 addresses the sovereign immunity of members of local governmental entities. The statute recognizes that these officials are "immune from suit arising from the exercise or failure to exercise their discretionary or governmental authority as members of the governing body." Code § 15.2-1405. The statute, however, expressly clarifies that these officials are not immune from gross negligence and intentional tort claims. In pertinent part, Code § 15.2-1405 states that the "immunity granted by this section shall not apply to conduct constituting intentional or willful misconduct or gross negligence."

In the present case, Wahlstrom asserted intentional tort claims (i.e., defamation and defamation per se) against Brooks-Buck and Riddick in their individual capacities. The amended complaint did not state that Wahlstrom was suing Brooks-Buck and Riddick in their official capacities as school board members. To the contrary, the amended complaint requested that the circuit court enter judgments against Brooks-Buck and Riddick rather than the school board. The school board was not named as a party to the litigation.

In their individual capacities, Brooks-Buck and Riddick are not entitled to sovereign immunity from Wahlstrom's intentional tort claims. *See* Code § 15.2-1405; *Fox*, 234 Va. at 424. Accordingly, the circuit court did not err by overruling Brooks-Buck's and Riddick's demurrers on this ground.

E.  STATUTORY IMMUNITY UNDER CODE § 8.01-223.2

In their final argument, Brooks-Buck and Riddick claim that they are immune from Wahlstrom's defamation and defamation per se claims under Code § 8.01-223.2.  Brooks-Buck and Riddick emphasize that they made the statements underlying Wahlstrom's claims to a governing body (i.e., the school board) concerning a matter properly before it (i.e., Brittingham's alleged disciplinary violations).

Code § 8.01-223.2 provides statutory immunity to individuals who make statements to governing bodies.[6]  In pertinent part, Code § 8.01-223.2 states:

> A person shall be immune from tort liability if the tort claim is based solely on statements . . . made at a public hearing before, or otherwise communicated to, the governing body of any locality or other political subdivision, or the boards, commissions, agencies and authorities thereof, and other governing bodies of any local governmental entity concerning matters properly before such body[.]

Code § 8.01-223.2(A)(ii).  The immunity granted by Code § 8.01-223.2, however, does not "apply to any statements that the declarant knew or should have known were false or were made with reckless disregard for whether they were false."  Code § 8.01-223.2(B).

Assuming that the statements at issue fall within the scope of Code § 8.01-223.2, the allegations of the amended complaint are sufficient to preclude Brooks-Buck's and Riddick's claims of immunity under the statute.  When viewed in the light most favorable to Wahlstrom, the allegations of the amended complaint imply that Brooks-Buck and Riddick either: (1) knew that the statements at issue were false, or (2) recklessly disregarded the falsity of the statements at issue.

---

[6] Code § 8.01-223.2 has been referred to as "Virginia's anti-SLAPP (strategic lawsuit against public participation) statute."  *See Fairfax v. CBS Corp.*, 2 F.4th 286, 296 (4th Cir. 2021).

The amended complaint did not expressly allege that Brooks-Buck and Riddick knew that the statements at issue were false. Nonetheless, the complaint asserted that Brooks-Buck and Riddick made "baseless accusations" concerning Wahlstrom's alleged perjury. Moreover, the complaint alleged that Brooks-Buck and Riddick made the statements with "ill will." After detailing the parties' contentious history, the complaint asserted that Brooks-Buck and Riddick had "extreme animosity" toward Wahlstrom. The complaint claimed that the statements concerning Wahlstrom's alleged perjury were made in "retaliation" for Wahlstrom's prior criticism of Brooks-Buck and Riddick and Wahlstrom's success in the VFOIA litigation.

At the demurrer stage of these proceedings, the allegations of Wahlstrom's amended complaint must be taken as true and all reasonable inferences flowing from those allegations must be drawn in Wahlstrom's favor. *See, e.g.*, *A.H.*, 297 Va. at 613. When the complaint is read as a whole, it implies that Brooks-Buck and Riddick intentionally made false statements about Wahlstrom based on their "ill will" and "extreme animosity" toward her. Alternatively, the allegations of the amended complaint imply that Brooks-Buck and Riddick recklessly disregarded the falsity of their "baseless" statements accusing Wahlstrom of perjury. Under these circumstances, the circuit court did not err by overruling Brooks-Buck's and Riddick's demurrers to the extent that they asserted statutory immunity under Code § 8.01-223.2.

### III. CONCLUSION

For the reasons stated, we affirm the circuit court's judgment and remand this case for further proceedings.

*Affirmed and remanded.*

12